WILLIAM LAGOW ET AL. V. GEORGE W. GLOVER ET AL.

No. 6425.

1. **Will—Probate Necessary.**—A will is not admissible in evidence as such until shown to have been duly probated.

2. **Presumption of Probate.**—Presumption of probate of an ancient will will not obtain until it be shown that the records of the proper court for its probate are lost or destroyed.

3. **Independent Executor, Power of.**—Such executor has no power by agreeing upon the locality of a line to give away or abandon land belonging to the estate of his testator.

4. **Acquiescence.**—If the true boundary line be doubtful or controverted, acquiescence of the parties in or their recognition of a particular line is evidence which should have great weight in determining the boundary, affording as it does a strong presumption that the line so recognized is the correct line; which presumption is strengthened by lapse of time. Floyd v. Rice, 28 Texas, 344.

5. **Same—Charge.**—Where heirs sued for land and their acquiescence with a line made without authority was pleaded in defense, there being no evidence tending to show acquiescense by any but one of the plaintiffs, a general charge submitting such defense was error, as was a verdict based on that issue.

6. **Charge.**—A charge defective in not defining *acquiescence*, while defective, is no ground for reversal.

APPEAL from Dallas. Tried below before Hon. George N. Aldredge. The case is stated in the opinion.

*Stemmons & Field,* for appellants.— 1. The will not having been admitted to probate, and the evidence attached to said will being insufficient to have admitted it to probate, it should have been rejected.

2. The executor alone had power to divide the land among the children of Thomas Lagow, and any attempted exercise of power by him by which a portion of the lands were given away would not bind the heirs of the estate. Saunders v. Hart, 57 Texas, 8.

3. The court erred in that portion of its charge wherein it stated that "if you find that W. T. Sadler, in 1854, did establish the 39½ line as the southeast boundary line of the Lagow league, and that defendants held and accepted it as the true southeast boundary line, and the Lagow heirs have acquiesced in it for several years after its establishment, this would make it the true southeast boundary line of said league," because there was no evidence to justify such a charge, and because there is too much uncertainty in that portion of the charge "acquiescence for several years," because there was no pretense that all the heirs of Thomas Lagow acquiesced for several years in the 39½ line, and because several of the heirs of Thomas Lagow were under disabilities that prevented their acquiescence for several years. Medlin v. Wilkins, 60 Texas, 409.

*John Bookhout,* for appellees, cited Hart. Dig., arts. 997, 3252; Paschal v. Acklin, 27 Texas, 193; Box v. Lawrence, 14 Texas, 555; Ingram v.

Ingram, Dallam, 519; Cooper v. Austin, 58 Texas, 500; Coleman v. Smith, 55 Texas, 260; Hoxie v. Clay, 20 Texas, 586; George v. Thomas, 16 Texas, 89; Floyd v. Rice, 28 Texas, 341; Bolton v. Lann, 16 Texas, 96; Dalby v. Booth, 16 Texas, 564.

STAYTON, CHIEF JUSTICE.—Appellants, the children of Thomas Lagow, seek in this action to recover a strip of land which they claim is a part of a league and labor granted to their ancestor in December, 1841.

According to the patent the southeast line of that grant runs north 45 degree east, and there seems to be but little if any ground for belief that the line was not thus originally established; nor does there seem to be controversy as to the point at which the southern corner on that line is to be found.

Thomas Lagow seems to have died as early as 1845, and it is claimed that he died testate, appointing one William T. Sadler the executor of his will.

A paper was offered in evidence by the defendants, over the objection of plaintiffs, which purported to be a certified copy of his will, but no decree was offered showing that it had been probated. That paper provided for the administration of his estate without the Probate Court, and contained the following paragraphs applicable to the land in controversy:

"Fourthly. It is my will that my executor, as soon as my above named heirs come of age, that he give to each of them of my lands in Nacogdoches County his equal share of the land, so that all shall share and share alike. The land alluded to lies near the Trinity River."

"Sixthly. I do hereby appoint William T. Sadler my executor, with full power to transact all my business of whatever kind it may be, to collect all debts due to me and pay all I may owe, make titles to all lands that I have bought out for titles, and also make titles to my heirs as they may become due; and in short to do all the business that may belong in any manner to my estate as executor."

It seems that sometime about the year 1847 Sadler, for some purpose, desired to run the southeast line of the survey, and that he caused the surveyor to begin to run the line from its most southern terminus on the course called for in the patent, but that this was objected to by owners of the contiguous lands to the east, whereupon he returned to the place of beginning and ran a line on course north 39½ degrees east, and the land in controversy is that between a line thus run and a line run on the course called for in the patent.

On October 2, 1860, Sadler made a deed to William Lagow for land contiguous to that line and running cross the entire grant, in which he called for the outer line on course north 39½ degrees east; and he subsequently partitioned all the grant, except that in controversy, between the heirs of Lagow.

Defendants offered in evidence the paper purporting to be a copy of the will of Thomas Lagow, probably for the purpose of showing the right and power of the person named as executor to establish the line of the Lagow grant at a place not the true line, for it is claimed by counsel for appellees that the paper gave him such power.

One of the objections to the paper was that it was not shown to have been probated, and we are of opinion that this objection should have been sustained.

There was no decree of the Probate Court shown admitting the will to probate, nor was there any evidence tending to show that the records of the court in which it was claimed to have been probated had been destroyed, or that for any reason a copy of the decree admitting the will to probate could not be procured if any ever existed. We are of opinion that the paper should have been excluded. Tucker v. Murphy, 66 Texas, 360; House v. Brent, 69 Texas, 30; French v. McGinnis, 69 Texas, 23.

If, however, it had been shown that the paper was duly probated, we do not see that it conferred on the person named as executor any power to establish a line of the grant at a place other than that called for in the grant, for that would involve the power to give away a part of the estate.

It was shown that Sadler assumed to act under the will, and if it had been shown that the records of the court in which it was claimed the will was probated had been destroyed or that for any reason a copy of the decree probating the will could not be obtained, then after the lapse of so long a period much ought to be presumed in favor of the proper probate of the will.

The introduction of the paper was calculated to impress the jury with the belief that it conferred a power on the person named as executor to establish a line other than the true line, and the court refused to give instructions asked which would have removed such impressions. These instructions ought to have been given.

If, acting as executor, Sadler had established the line at the place where it is claimed that he did, even though this was done without authority, the subsequent recognition of that line as the true line by the heirs with a knowledge of the facts ought to bind them, if that recognition was such as would bind them had the line been recognized by their ancestor but not by him established by parol agreement.

We do not find in the record, however, any fact tending to show that any of the children of Thomas Lagow, unless it was William, did any act which would amount to a recognition of the line claimed by defendants as the established line.

The Stockton grant, under which some of the defendants claim, is a junior grant, and one of its lines calls to run with the southeast line of the grant to Thomas Lagow on course north 45 degrees east, and deeds under which some of the defendants claim call for the same line.

We do not see from the record that any grant or deed under which defendants claim calls for land inside of the Lagow grant as described in the patent. There was no parol agreement establishing the line of the Lagow grant in controversy where the defendants claim that it was established that can bind the plaintiffs, and in the absence of this there must have been a recognized line with reference to which they have acted or in which they have acquiesced. Acquiescence may be looked to for several purposes. If the true boundary line be doubtful or controverted, "acquiescence of the parties in or their recognition of a particular line is evidence which should have great weight in determining their boundary, affording as it does a strong presumption that the line so recognized is the correct line, which presumption is strengthened by the lapse of time." Floyd v. Rice, 28 Texas, 344.

We do not understand the defendants to seriously controvert the true position of the line of the Lagow grant in question, and the matter of acquiescence is not brought into the case for the purpose of showing where the true line is; nor did the charge of the court direct the mind of the jury to it with a view to enable them to determine the true line.

If a line be recognized and acquiesced in by owners of adjacent lands, persons acquiring rights with knowledge of such recognition or acquiescence will be entitled to protection, for under such circumstances the owner, as to such person, ought not to be heard to say that the recognized line was not the true line.

There is no evidence tending to show that any of the plaintiffs, except William, had any knowledge that Sadler had established or attempted to establish the line now claimed by defendants, and they can not be held to have acquiesced in that of which they had no knowledge.

William Lagow accepted a deed from Sadler which calls for the line that runs on course north $39\frac{1}{2}$ degrees east for his southeastern boundary, and the deed recognizes that line as the southeastern boundary of the grant. The evidence may justify a finding that he acquiesced in that line, and some of the defendants purchased from owners of adjoining grants since that deed was made.

There is no evidence that Silas Lagow knew that Sadler had attempted to establish a line, though one witness states that the plaintiffs, without naming them, pointed out the line on course north $39\frac{1}{2}$ degrees east as the southeastern boundary, but on being recalled his evidence tends to show that it was William Lagow who pointed out that line as the true line.

The evidence of the same witness shows that the person who pointed out the line, before doing so, had to apply to the owner of a contiguous grant, under whom some of defendants claim, to ascertain where it was, and that this person informed them where they would find the line which it is claimed that Sadler established.

Silas Lagow expressly denies that he was present when these things oc-

curred, and we do not see evidence from which acquiesence on his part can be claimed.

The court, among other things, instructed the jury as follows: " If, upon the other hand, you find that W. T. Sadler in 1854 did establish the 39½ line as the southeast boundary line of said Lagow survey, and if you further find that defendants or those under whom they hold accepted said 39½ line as the true southeast boundary line of said league and have acquiesced in it as thus established since that time, and if you also find that the Lagow heirs acquiesced in it as the true southeast boundary line of said league for several years after the establishment by said Sadler, then you are instructed that the 39½ line so established and acquiesced in by the said parties would make it the true southeast boundary of said league, whether it was the true line as originally run by the surveyor in locating the league or not; and if you find that said 39½ line was so established and acquiesced in as above stated, then you will find for defendants the land in controversy."

The verdict of the jury, in view of charges given as to defenses under the statutes of limitation, must have been based on this charge, and we are of opinion that the evidence did not show facts which made such a charge proper as to any of the plaintiffs except William Lagow.

The charge was also too general in that it did not inform the jury what was meant by "acquiescence;" but this was a matter which appellants might have had explained to the jury had they asked a proper charge. This they did not.

There are other questions presented by the assignments of error not likely to arise on another trial and well settled by prior decisions which we do not deem it now necessary to discuss, but for the matters referred to the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 23, 1890.