Adopted March 3, 1891.

---

## M. KOENIGHEIM v. ASENATH SHERWOOD.

### No. 6654.

1. **Boundary Lines — Corners.**—Two adjoining surveys on the north side of the Concho River were fixed in 1870 by a surveyor by the aid of a Land Office map, the corners being placed opposite well known corners of surveys on the south side as appearing upon the map. The surveys on the different sides of the river did not call for those across the river, nor were they dependent upon them. The surveys were subdivided according to this survey, and the owners conveyed some of the subdivisions, calling for the west line as so determined. In 1879 bearing trees were found as described in the original field notes of the surveys upon the river. *Held,* that the verdict of the jury as to the locality of surveys, and placing it according to the corners as fixed by the bearing trees, will not be disturbed.

2. **Acquiescence.**—Acquiescence is a question of fact, and each case must furnish its own rule, to be deduced from its own facts and circumstances. See facts not evidencing an acquiescence in the surveyed lines of adjacent surveys.

3. **Estoppel.**—The intervenor, not showing that he acted upon any statement or representation of the plaintiff, does not establish an estoppel.

ERROR from Tom Green. Tried below before Hon. J. C. Randolph. The opinion contains a sufficient statement.

*Joseph Spence, Jr.,* and *Geo. C. Altgelt,* for plaintiff in error.— 1. By a preponderance of evidence it was shown that the land in controversy was part of the survey to which plaintiff in error had shown title, and not part of the adjoining survey owned by the defendant in error, and the court should have set aside the verdict of the jury on motion by plaintiff in error.

2. The evidence on agreed boundaries being without substantial con-

flict and showing such boundaries beyond doubt, and further showing the location of such boundaries as claimed by plaintiff in error, the court below should have granted a new trial on motion calling attention to such facts. Hefner and Lockhart v. Downing, 57 Texas, 576; Coleman v. Smith, 55 Texas, 254; Cooper v. Austin, 58 Texas, 494; Davis v. Smith, 61 Texas, 18; Davis v. Mitchell, 65 Texas, 623; Browning v. Atkinson, 46 Texas, 606; George v. Thomas, 16 Texas, 76; Blassingame v. Davis, 68 Texas, 597.

3. There is no conflict of testimony upon the issue of agreed boundaries. The proof shows that Schleicher, under authority of Sherwood, employed Biberstein to make the survey; that Sherwood adopted it; even that his widow made conveyances on the basis of it; that De Witt and Frary agreed to it; in fact that everybody in interest acted on the Biberstein survey until the discovery of the supposed true line by Foote in 1879. The rules of law applicable to the facts were charged in forcible language, yet the jury found against the whole evidence, disregarding the charge of the court. The rules laid down by this court with reference to setting aside the verdict in such cases after it has been sustained by the trial court do not need citation.

Applying those rules to the case at bar, after indulging every presumption in favor of the verdict and judgment, the result can not be upheld upon the testimony of the witnesses and other evidence of the defendant in error. Considering the whole evidence, the conclusion is irresistible that there was a binding settlement of boundaries long before the institution of this suit.

The language of Judge Wheeler in George v. Thomas, 16 Texas, 89, to the effect "that settlements of boundary are common, beneficial, approved and encouraged by courts, and ought not to be disturbed, though it was afterwards shown that they had been erroneously settled," may well be applied to this case.

No brief for defendant in error.

COLLARD, JUDGE.—The main question in this case is one of boundary and agreed boundary.

Plaintiff claims and sues for a strip of land $131\frac{1}{2}$ varas wide on the west side of survey No. 324, also $31\frac{1}{2}$ varas wide on the east side of subdivision No. 3, and all of subdivision No. 4, part of survey No. 324. The intervenor, Koenigheim, claims certain lots in block 5 in the town of San Angelo, and a survey adjoining and north of block 5, beginning at its northeast corner, $672\frac{11}{100}$ varas north and south by $140\frac{4}{10}$ varas south $69\frac{1}{2}$ west, all of which he alleges is a part of the east side of survey No. 323.

Defendants claimed that the land owned by intervenor was altogether upon survey No. 323 and did not include the land which they occupied, all of which was on survey No. 324. But the intervenor insisted that there

was a division line made and agreed to and acquiesced in, placing the east line of 323 where the intervenor claims it to be, by which agreement and acquiescence all the parties are bound.

Survey No. 323 of 320 acres was patented to G. H. Sherwood, assignee, October, 1855.   It commenced at the lower corner of survey No. 322, from which two pecan trees are called for as bearings on the north bank of the Concho River; thence north 60 east 2220 varas to a stake and mound; thence south 960 varas to a stake on the bank of the river, from which two pecan trees are called for; and thence up the river with its meanderings to the beginning.   Sherwood, by his agent, conveyed the survey to Bart J. De Witt September 22, 1870, and De Witt conveyed it to the intervenor September 25, 1877.   Sherwood was also the patentee of survey No. 324, which commences at the lower or southeast corner of survey No. 323, calling for the same witness trees as are called for at the southeast corner of No. 323.   It runs thence north 3900 varas to a stake; thence east 950 varas to a stake; thence south 3700 varas to a stake on the bank of the river, from which two pecan trees are called as bearing trees; and thence up the river to the beginning.   April 29, 1871, Sherwood conveyed by agent subdivisions of No. 324, to-wit, subdivisions Nos. 1 and 2, to S. R. Bridges, the deed calling for the upper corner of the two subdivisions as the upper or southwest corner of the whole tract, each division running down the river 100 varas front and then north in parallel lines to the back line of the whole survey "as laid off by Biberstein."   Defendants claim under this deed by regular conveyance.   Asenath Sherwood is the surviving wife and devisee under the will of G. H. Sherwood, deceased.

In 1870 Biberstein made a survey of Nos. 323, 324, and 325, the last two surveys for Schleicher, agent of Sherwood, and No. 323 for De Witt. Schleicher furnished him a map indicating the position of the surveys in the locality on both sides of the river, but the surveys on the south side of the river were not called for by those on the north.   He was not able to find any of the corners of surveys 323, 324, or 325.   The plot he had furnished by Schleicher, similar to Land Office plots offered in evidence, showed that the upper or west corner of No. 323 was opposite to the upper or west corner of survey No. 187, on the south side of the river.   He made this point a beginning corner of No. 323, ran the first line north 60 east 2220 varas according to the call, and thence south to the river, and thence up the river to the beginning, finding no corners or marks of identity.   He then established the southeast corner of survey No. 325 due north and opposite the lower river corner of survey No. 166 on the south side of the river, as the plot he had so indicated it, not being able to find any corners for 325.   Surveys Nos. 166 and 187 were well identified on the ground. He then ran west from the east line of 325 so established 1960 varas (the distance called being 1900 varas), because 80 varas would be the usual excess for these surveys, to the east line of No. 323 as fixed by him, but

stopped at the 60 varas excess because he had reached the east line of 323 as he had established it. This line should be the west line of No. 324. He made a corner on the river for the southwest corner of 324, and the witness trees are still there as he marked them. The survey No. 324 so established, if correct, will give the disputed land to survey No. 323, as the intervenor contends it should. Assuming his location of 323 to be correct, the meanderings of the river will fit, but the east line will not reach the river by 800 varas. His survey gives 323—a 320-acre survey— an excess of about 40 acres, which is not unusual. His survey was generally recognized as correct in 1873.

There are some other facts of minor force which support the theory of Biberstein that he had located the disputed line in its true position. But there was testimony on the other hand of a more convincing character that fixed the line as contended for by the plaintiff and defendants. It was proved by the testimony of Foote and others that in 1879 he found a corner, the upper corner of No. 323, as also what he concluded was the lower corner. He says the tree at the upper corner fits exactly, and the tree at the lower corner is 20 varas too far east; with this exception the trees correspond with the calls in the field notes. Witness Miles said he went to the upper corner of 323, and there found a tree marked with X, an old mark, as called for in the original field notes, and the stump of the other tree which fit the field notes. From this he said they ran north 60 east 2200 varas, thence south to the river 960 varas, and found a marked pecan tree and a stump; the tree is about thirty or forty inches in diameter and fits the field notes pretty well. Prior to 1879, when this corner was found, Biberstein's corner was regarded as the true corner of 323 and 324, but after the finding of the corner by Foote the general reputation was that it was the true corner. W. G. Taylor surveyed No. 323, beginning about 800 varas below the upper corner of survey 322, which he identified by mesquite stumps at its upper corner, and where he commenced on 323 he found a pecan tree marked as described in the original field notes, thus X, the marks very old, and from this corner he ran out the survey No. 323. This was the corner found by Foote. Constructing the survey from the corners so found survey 324 has its position as claimed by plaintiff and defendants below; but according to Biberstein's survey 323 ran over on to 324, some say $131\frac{1}{2}$ varas, and some say as much as 200 varas, while it is not disputed that according to his survey the east line of 323 would not reach the river by over 800 varas. The jury evidently found that the Foote corner was the true corner. The evidence, if not conclusive, is satisfactory that the conclusion of the jury is correct. Biberstein was directed in his survey by other surveys on the south side of the river which the map he had in his possession, say a Land Office map, indicated as being opposite in some lines to the surveys, and lines of surveys on the north side of the river. These supposed opposite lines of surveys are not

shown to call for each other or to depend upon each other except by the plats from the Land Office. The evidence that the surveys are in a different locality from where Biberstein placed them, as shown by their found corners, is of a more direct and positive character than the evidence he was governed by, and we think the jury was properly influenced by it. So the disputed strip is not on survey No. 323, and could not be recovered by intervenor, who is in the attitude of a plaintiff both as to the plaintiff, Mrs. Sherwood, and the defendants.

But the intervenor says that the plaintiff and defendants are bound by an agreed line or by a line acquiesced in. We will only notice the facts of acquiescence that would apply to Mrs. Sherwood's claim. Her husband was alive when Schleicher, his agent to sell and "generally to represent his interests concerning such land," authorized Biberstein to run off surveys Nos. 324 and 325, De Witt having authorized him to survey No. 323. He made the survey in the spring of 1870, as we have seen, placing the southeast corner of No. 323 from 131½ to 200 varas too far east or down the river, dividing 324 and 325 into strips fronting on the river and running back to the north line, numbering the strips from 1 to 19 from the southwest corner of survey 324 as he established it. He reported the survey of 324 to Schleicher and the survey of 323 to De Witt. It was after this—September 22, 1870—that De Witt bought from Schleicher, agent of Sherwood, survey 323 by the field notes and calls of the patent, his deed making no mention of the Biberstein survey. It was in proof that De Witt was with Biberstein a part of the time while the survey was being made and that he knew where Biberstein placed the dividing lines between surveys 323 and 324. The evidence does not explain why De Witt was having the survey made before his purchase, nor does it show that he was in any way influenced in his purchase by the Biberstein work, and hence there is no estoppel against Sherwood by virtue of such purchase. Love v. Barber, 17 Texas, 312; Lagow v. Glover, 77 Texas, 451.

The reputed line was where Biberstein established it until in 1879, when Foote found the true corner on the river, as found by the jury, after which his line was understood to be correct.

In April, 1871, agent Schleicher conveyed by deed to Bridges 130 acres— that is subdivisions 1 and 2 of survey No. 324, as laid off by Biberstein— in which conveyance it is stated that the upper or southwest corner of the subdivisions is the southwest corner of the whole tract No. 324. It is also shown that in 1879 Mrs. Sherwood, surviving wife and legatee of G. H. Sherwood, the original patentee of these surveys, conveyed subdivisions 3 and 4 of survey No. 324, in which she recognized the west line of the whole tract as identical with the west line of subdivision No. 1; but this deed was made after De Witt had sold to the intervenor. It is shown that the intervenor and De Witt claimed and exercised acts of ownership over the disputed land to the line established by Biberstein, and that de-

fendants at one time also recognized the line as correct.    Indeed, we think the defendants claiming under Bridges are bound by the Biberstein survey, because the deed to Bridges expressly conveyed subdivisions 1 and 2 as made by Biberstein, which subdivisions were marked on the ground, the locality of which is not in dispute.   There can be no doubt of the locality of these subdivisions.   But these defendants can not affect the rights of Mrs. Sherwood by recognition of the Biberstein survey or by their acquiescence therein, or by agreements with De Witt.    The disputed land had never been sold by her husband, and she had never sold it.    It was her property, unless it had passed to De Witt or the intervenor, Koenigheim, by acquiescence of her husband or of him and herself.

The court below submitted a careful and able charge to the jury upon this question of acquiescence, which the intervenor does not complain of, and the jury decided against the acquiescence, a conclusion which we can not say was so certainly erroneous as to require a reversal at our hands.

Acquiescence is a question of fact, and "each case must furnish its own rule to be deduced from its own facts, circumstances, and surroundings." Floyd v. Rice, 28 Texas, 344.

There is no evidence at all in support of the proposition that either Sherwood or Schleicher, his agent, or Mrs. Sherwood ever agreed with De Witt or the intervenor that the Biberstein line was the correct line, nor did they or either of them ever contract with De Witt or intervenor in reference thereto recognizing the line as correct.    There is no estoppel in the case, and no such absolute acquiescence as will enable us to disaffirm the verdict of the jury in favor of Mrs. Sherwood.    The verdict in favor of Mrs. Sherwood, the plaintiff, defeats the right of intervenor to recover against her or the defendants.    She recovered on her legal title, and it is our opinion that the judgment should be affirmed.

*Affirmed.*