## H. G. BOHNY v. W. P. PETTY.

### No. 6768.

1. **Charge Upon Title Papers.**—Plaintiff exhibited title to the south half of a fractional lot or block of one hundred feet width, the only landmark being the northeast corner of the lot. There was a controversy about seven feet along the north side of the south half. The court properly instructed the jury that the plaintiff had shown title to the said south half unless he had lost it by his acts and omissions to be afterward explained in the charge, the charge being full upon the issues affecting an estoppel.

2. **Charge.**—That the owner of the south half of a lot fixed by one corner and limited by course and distance, in settlement with the owner of the land south of and adjoining his, may have fixed his south line so as to include land not his own, can not have the effect of altering the locality of his land, nor of removing his north line an equal distance south of the true line to that he inclosed beyond his line on the south. It was proper to instruct the jury that it was immaterial that the plaintiff had fixed his south line too far south, and that such fact could not affect the matter in controversy.

3. **Acquiescence in a Line.**—While acquiescence in a line by the parties interested is entitled to weight in ascertaining the locality of the line, its effect is for the jury, and the court can not as matter of law instruct that acquiescence for any period will operate as an estoppel.

4. **Acts Constituting an Estoppel.**—Plaintiff owned the south half of a fractional lot of one hundred feet width. In inclosing it by mistake he placed his fence seven feet south of his north line. The owner of the north half joined fences with the plaintiff, thus inclosing the seven feet with his north half. The defendant before his purchase, knew of the excess and made other improvements upon the land in dispute. The plaintiff did not know his fence had not been placed upon his north line until a short time before he instituted suit. *Held*, that such testimony did not require a charge upon the facts as constituting an estoppel. The charge properly recognized the principle that if defendant or his grantor was misled by the acts of the plaintiff, or by the position of the fence at the time of his purchase, the plaintiff would be estopped to claim the land in dispute.

APPEAL from Cooke. Tried below before Hon. F. E. Piner.

The opinion states the case.

*Davis & Garnett*, for appellant, cited Sayles' Civ. Stats., art. 2317, notes 5 and 6; Boaz v. Schneider & Davis, 69 Texas, 128; Heffner v. Downing, 57 Texas, 576; Davis v. Smith, 61 Texas, 23; Bolton v. Land, 16 Texas, 96; Floyd v. Rice, 28 Texas, 342; Hoxie v. Clay, 20 Texas, 586; Houston v. Sneed, 15 Texas, 307.

*Potter, Potter & Eddleman*, for appellee.—1. It is the duty of the court to construe deeds and inform the jury of their legal import; and the court correctly told the jury in this case that the deeds offered in evidence by plaintiff conferred upon him title to the land in controversy.

2. Bohny's south line was fixed by all the deeds in his chain of title at fifty feet south of his northeast corner. Petty's north line was fixed by the deeds constituting his chain of title at fifty feet south of Bohny's

northeast corner. The agreement between Bomar and Petty, founded in mutual mistake, could not inure to the benefit of Bohny so as to place his south line further south, nor to the injury of Petty so as to preclude him from claiming his north line where both titles fixed it.

3. There·was no evidence in this case that justified the court in submitting to the jury the questions of acquiescence in division lines or of estoppel, or that would sustain a finding by the jury on such questions favorable to appellant.

4. The evidence in the case would not authorize the court to submit to the jury the propositions contained in the four. refused charges; and if it would, they were in substance, given by the court in the sixth clause of his charge. [See opinion.] Floyd v. Rice, 28 Texas, 341; Medlin v. Wilkins, 60 Texas, 409.

COLLARD, JUDGE, *Section A.*—This suit was brought in the District Court of Cooke County on the 20th day of March, 1888, in form of trespass to try title, by the appellee W. P. Petty against the appellant H. G. Bohny to recover 7 by 100 feet of land in Gainesville, Texas. Bohny answered not guilty, by pleas of limitation of five years, and improvements made in good faith. There was a verdict and judgment for Petty May 5, 1888, for the land and for Bohny for improvements, and the latter appealed. The controversy grew out of the following transaction:

On March 5, 1873, one N. T. Bomar owned a certain two acres of land in Gainesville, bounded on the north by Gomar Street and on the east by Commerce Street, formerly Dye Street. On that date he conveyed to J. T. Rowland a strip 100 feet wide off the north side of the tract— that is, beginning at the northeast corner of the tract, thence south 100 feet, thence west 178 feet, thence north 100 feet, and thence east 178 feet to the beginning.

March 11, 1873, Rowland conveyed to W. E. Fletcher the south half of the strip—that is, a strip 50 feet wide. Fletcher conveyed the same to Lewis Broadwell October 5, 1877, and Broadwell conveyed it to W. P. Petty February 5, 1879. Petty conveyed to B. Sommers April 20, 1887, and a short time before the institution of this suit Sommers' vendee reconveyed the strip to Petty. On March 19, 1873, Rowland conveyed the north half of the strip bought by him from Bomar to F. Y. Hall, Hall to R. S. Rollins October 20, 1873, Rollins to M. Kahn April 16, 1879, Kahn to J. T. Walker May 29, 1879, and Walker to Bohny December 23, 1882. The northeast corner of the strip bought by Rowland from Bomar is identified by an old hedge where the west line of Commerce Street intersects the south line of Gorham Street, but there are no other marks, corners, or lines to identify the original strip sold to Rowland or the subdivisions of the same. The deeds call for course and distance, only designating the known northeast corner.

At the time Bomar sold off the strip to Rowland he had the whole of his two acres fenced, and after the sale he moved his north fence down south to what he supposed was 100 feet running east and west. Soon after Petty became the owner of the south half of the Rowland strip, in 1879, one Blackwood, acting for Petty, built a fence around what he supposed was the Petty lot. When he commenced to build the fence he went to Bomar and asked him where Petty's south line was, and Bomar said it was at his (Bomar's) north line of fence, and that if it was not right "we could make it right." Blackwood then measured off fifty feet north of Bomar's fence and built Petty's north string of fence at that point. The truth was that Bomar's fence was seven feet too far south, and this led to the placing of Petty's north fence the same distance too far south.

When Walker bought the north half of the Rowland strip Petty's lot was inclosed as above stated with a plank fence; the rest of the land on the north was not inclosed. He commenced to improve in 1880, moved a residence on the same and inclosed it, joining fences with Petty by his permission. He says: "When I fenced my lot I found I had too much ground on the south." Before he sold to defendant Bohny in 1882 they went and looked at the lot, Petty's north fence being the division line. He (Walker) told Bohny there was too much land in his inclosure, four or five feet in excess of fifty feet, and that he thought the north fence might be four or five feet too far north and take in a part of Gorham Street. He (Walker) did not know, and "never once thought" that Petty had any land north of his fence; thought he had all his land inclosed with his fence. "I supposed Petty's north fence was on his north line, but never heard him say anything about where his north line was. I fenced it all in, thinking I would get that much more if nothing was ever said about it."

Petty always supposed that the fence he built was on his north line until about July, 1887. He did not tell Bohny he had too much land in his inclosure, because he did not know it. The north fence of Petty was regarded by him and Walker and Bohny as the division line between them up to July, 1887. After buying the land of Walker, Bohny placed some improvements on the disputed seven feet—a chicken house and a water closet, and planted three cedar trees (five years old at the time of the trial), a catalpa tree, some rose bushes, and shrubbery. He also several times repaired parts of the division fence, and thought it was the line. He built a bakery and a store on the lot north of the disputed seven feet in the northeast corner of his lot, and has lived on it since his purchase from Walker.

Bomar has never claimed any land north of his north fence. He testified that when Blackwood came to build Petty's fence something was said about his north fence being the line, "And I told Blackwood it made no difference whether it was the right line or not; that we would

let my north fence be the south line of Petty's lot and the north line of my lot."

The court instructed the jury that plaintiff had shown a good title to the lot described in his petition unless he had lost the same by his own acts and omissions, as would be afterward explained, and that defendant had shown a good title to the lot conveyed in the deed of Walker to him, described as beginning at the northeast corner of a two acres tract heretofore owned by Dr. N. T. Bomar, thence west 100 feet, thence south 50 feet, thence east 100 feet, and thence north 50 feet, and consequently there were but two questions for the jury (besides that of improvements in good faith): first, as to the locality of the true line; and second, if it is where plaintiff claims it to be, whether he had lost the land by his acts and omissions.

Appellant objects to this charge because the court charges that plaintiff had established title to the land in controversy. The objection is to only a part of a sentence in the charge. The court did not unqualifiedly tell the jury that plaintiff had shown title to the land in controversy, but that he had done so unless he had lost it by his acts and omissions to be afterward explained.

We think the charge was correct. Plaintiff's deed covers and conveys the south fifty feet strip of the Rowland strip, and so do the mesne conveyances from Rowland down to him. There is no doubt or question about the fact that this Petty strip includes the land, the seven feet in dispute, and that he showed title to it unless, as stated by the court, he had lost it by some act or omission. The court fully instructed the jury as to the principle that if Petty by placing his north fence where it was had misled either Walker or Bohny into the purchase of the land and improving the same; or if defendant did not know where the line was, but by reason of plaintiff's improvements or acts or conduct coupled with the fencing, or by the representations of Walker, he was misled as to where the line was and erected valuable improvements upon the land in dispute, they should find for defendant; but that if defendant knew Petty's fence was not on the line, or from all the circumstances had such notice as would have induced a reasonably prudent man to make inquiry as to the true line and he failed to make such inquiry, he could not recover. There being no dispute in the evidence about the seven feet in controversy being on the fifty feet embraced in Petty's deed, there was no error in informing the jury that he had shown title to it unless such title was defeated as explained by the court.

The court instructed the jury that if Bomar and Petty agreed on their division line (Petty's south line) such agreement would have no effect in establishing the north line of Petty's lot, and that it was wholly immaterial whether such agreement was made or not. The assignment of error to this charge is not well taken. Petty and Bomar could

establish their divisional line as they saw proper, without affecting Petty's north division line with another party. If such an agreement had lost to Petty seven feet of land he could not be compensated for such loss by taking the same space on the north from a stranger. He would have no right to so make up his loss. Having gained seven feet on the south, he would be under no obligations to surrender a like amount to the stranger owning land on the north.

Appellant insists that the court erred in refusing his requested charges of the following purport:

"2. If Petty, being the owner of the south half of the Rowland strip, built a fence on what he believed to be his north line, and for a number of years occupied and claimed the fifty feet south of the fence, and if for a number of years the fence was recognized as the line between him and Bohny, and that Bohny claimed to said line and no further, the line would bind both the parties though located in error.

"3. If after the plaintiff had inclosed his land and claimed the fifty feet embraced in his inclosure and the defendant bought the land north of said fence, believing that said fence was the real line and not knowing of any error or mistake in the south line, then the defendant can hold to the said land (line).

"4. If W. P. Petty built a fence on what he believed and intended to be his north line and for a number of years claimed to said line and no further, and at the time the defendant purchased from John T. Walker he believed that said fence was on said Petty's north line, and he bought, believing that his land extended to said fence, and if after his purchase from Walker the defendant for a number of years claimed to said fence, and if the said Petty knew that the defendant claimed said fence to be his south line and was improving to the same and made no objection to said improvement or claim, then the defendant can hold to said fence, whether said fence was on the true line or not.

"5. If one land owner runs and marks or fences what he intends to be his lines, and if an adjoining owner acquiesces in such line and claims and improves to the same without objection on the part of the person who so works or fences his lines, then such acts would amount to an agreed line, and could not be disturbed by either party, though found to be incorrect."

We do not think the circumstances of acquiescence shown in this case would have authorized the court below to direct the jury to find for the defendant on that ground. Such recognition of a line as the true boundary between the parties is held to be entitled to great weight in determining where the boundary is, and to authorize the presumption after the lapse of a number of years of such acquiescence that the parties had agreed to the line as the correct one. The court in this case could not have correctly instructed the jury that the recognition of the line in question in this case by the parties as their boundary for

the seven or eight years as shown by the testimony was conclusive of the fact in issue. What lapse of time of such acquiescence would conclude the parties need not be now determined, nor need we say that any number of years of acquiescence would have such effect as a matter of law. It is enough to say now that the facts of this case would not have justified such a charge. Floyd v. Rice, 28 Texas, 344; Medlin v. Wilkins, 60 Texas, 409; Hefner v. Downing, 57 Texas, 580.

The court should not have given the third requested charge of defendant. It did not present the law applicable to the facts. There was evidence tending to put defendant upon inquiry as to the fact that the fence on the supposed north line of Petty's lot was not the true line, and tending to show that if Petty regarded it as his line he was in error. Had defendant at the time of his purchase followed this inquiry the fact would have appeared that his purchase could not reach the fence by seven feet. He was told by Walker that there was too much land, more than fifty feet in width from Gorham Street to the fence, and that the error was a conflict with the street as he thought. The requested charge ignored this knowledge upon the part of Bohny, and was incorrect for that reason. He could not complain of Petty if he "believed" the latter's fence was on the line in the face of such information, and so excuse himself for taking a part of the latter's lot. He got all the land and the very land his deed called for, and was before his purchase apprised of the fact that there was an excess between the street and the fence, or could easily have known it by reasonable care. Petty had no such knowledge; he was ignorant of the fact known to both Walker and Bohny, and in such case would not be estopped by their purchase.

The same rule will apply to the attempt to estop Petty by reason of the improvements put on the disputed strip by Bohny. The court's charge in this respect was correct; it recognized the principle of estoppel as against Petty in case Walker or Bohny was misled by his acts, or in case defendant was misled by the position of the fence and by the representations of Walker to him at the time of his purchase. We do not think Walker's representations to Bohny could estop Petty, he not being present. Our opinion of the case is that Bohny bought and improved the land at his own peril, that Petty was not estopped to claim all of his lot on the north, and that the verdict of the jury was amply supported by the evidence. Bohny was allowed compensation for the improvements he had placed on the disputed strip, and does not complain of the amount.

Believing that the justice of the case has been reached, and finding no reversible error as assigned, we conclude that the judgment of the lower court should be affirmed.

*Affirmed.*

Adopted June 23, 1891.