BEEBE et al. v. SWEENEY et al.

(Court of Civil Appeals of Texas. Galveston. May 15, 1913. Additional Findings of Fact, June 5, 1913.)

1. BOUNDARIES (§ 37*)—SUFFICIENCY OF EVIDENCE—ACQUIESCENCE.
Evidence in trespass to try title held not to show a recognition of, and acquiescence in, a certain line as a boundary line by the person under whom defendant claimed.
[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

2. BOUNDARIES (§ 35*)—EVIDENCE—ACQUIESCENCE.
In trespass to try title, in which plaintiff claimed that defendant was estopped from claiming the land in controversy by his grantor having acquiesced in the establishment of a certain line as a boundary line, evidence was not admissible to support such claim that witness after examining the title to the property for plaintiff's vendor advised him that title was good.
[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 153–155, 157–159, 163, 165, 177–183; Dec. Dig. § 35.*]

3. BOUNDARIES (§ 48*)—ESTABLISHMENT OF LINE—ACQUIESCENCE.
Acquiescence in a boundary line established by an adjoining owner affords a strong presumption that such line is the true line, but is not conclusive thereon; the weight of such acquiescence depending upon the circumstances and being for the jury's determination.
[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 232–242; Dec. Dig. § 48.*]

4. TRIAL (§ 170*)—DIRECTED VERDICT—SUBMISSION ON SPECIAL ISSUES.
A request to direct a verdict for plaintiff in certain contingencies was properly refused, where the case is submitted on special issues.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 390–394; Dec. Dig. § 170.*]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by J. C. Beebe and others against Hallie B. Sweeney and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

W. J. Howard, of Houston, for appellants. Campbell, Sonfield, Sewall & Myer and W. F. Carothers, all of Houston, for appellees.

REESE, J. This is an action in trespass to try title instituted by J. C. Beebe et al. against Hallie B. Sweeney et al. to recover a tract of about 120 acres of land out of the Wm. Scott league in Harris county. The suit, in fact, is to settle a boundary between two parts of said league, being that part set apart to Sarah P. Williams and that set apart to George W. Scott, two of the four children and heirs at law of William Scott, out of said league, in so far as said boundary is also the boundary line between lands belonging to plaintiffs on the George W. Scott part of said league, and lands belonging to defendants on the Sarah P. Williams portion. The case was submitted to the jury on special issues. The verdict upon these special issues was in favor of defendants, and judgment was rendered in their favor, from which the plaintiffs appeal.

The following sketch will explain the subject-matter in controversy:

BAY

Appellants deraign their title from George W. Scott and appellees under Mrs Sarah P. Williams. It is not disputed that each of these parties owned approximately one-fourth of the William Scott league, and that the league was partitioned between the four heirs mentioned. The division line between the Sarah P. Williams tract and the George Scott tract, it is agreed, began at a cypress on Bridge gully on the bay, the location of which is not disputed, and ran thence to the north line of the league. Appellants claim

that this line ran from this cypress north 5 degrees east, and appellees claim that the course was north 12 degrees east. The land in controversy is the tract bounded by these two lines on the east and west, respectively, by the Overland tract on the south and the north line of the league on the north. The partition of the league among the four heirs, it is contended by appellants, was effected by each of them conveying a separate tract, approximately one-fourth of the league, by several and separate deeds. Appellees contend, on the other hand, that there was a verbal partition made and agreed on about 1843, a survey having been made by a surveyor for that purpose, one John Carson, and that afterwards each one of the heirs conveyed the portion so allotted to him in this verbal partition. In answer to questions propounded by the court, the jury replied, first, that the partition of the league was made by the heirs in the year 1843; second, that at the time of the partition there was a "sole" division line actually established on the ground between the portions of the William Scott league awarded to Sarah P. Williams and George Scott, respectively, in said partition; third, that this line starting at the mouth of Bridge gully at the cypress mentioned, ran north 12 degrees east to the north line of the William Scott league; and, fourth, that Mrs. Williams and George W. Scott never subsequently changed this line. The evidence fully authorizes and supports these findings, and we hereby adopt them as our conclusions of fact. The evidence is voluminous, and it is neither necessary nor proper that this opinion be burdened with a recitation of it. The evidence that such partition was actually made is shown by recitals in the deeds afterwards made by the several heirs, by the original field notes of Carson of the Sarah P. Williams tract dated in 1843, and which have been handed down and kept with the deeds of that tract, and produced at the trial. It does not appear that these field notes were ever recorded, but their genuineness was sufficiently shown. Certain old original maps or sketches of the land were also introduced in evidence. This evidence also sufficiently established that the division line between the Sarah Williams and George Scott portions of the league ran from the cypress called for north 12 degrees east. The Carson field notes called for this line, and so did the old original maps referred to. The further answer of the jury that this line so actually established on the ground was never subsequently changed by Mrs. Williams and George Scott was supported by the evidence.

Appellants' contention rests mainly upon the following facts: In 1848 George Scott conveyed to one Overland a part of his tract, marked on the sketch as the "Overland tract," the deed describing this line, the west line of the Overland tract, as running north 5 degrees east from the cypress mentioned. In 1848 he also conveyed to Thomas Wright what appears to be the remainder of his tract, giving the boundaries as in part along the east and north lines of the Overland tract to its northwest corner, and thence north 5 degrees east to the north line of the league. This last line would be a prolongation of a line from the cypress referred to, north 5 degrees east to the north line of the league. In 1860 Sarah P. Williams conveyed to William H. Williams her portion of the Scott league by the following description: "All that tract of land situated in Harris county, state aforesaid, on the E. side of San Jacinto or Galveston Bay about 5 miles from the town of Lynchburg and the upper division of the league of land granted by the government of Coahuila & Texas to my father, William Scott, and that part of said league set apart to me as one of my said father's heirs under and by virtue of a partition effected between said heirs, said tract hereby conveyed includes all the front on said bay comprehending the old homestead improvements and land back to the back line of the league and between the Bloodgood place above and the piece or division of said league below acquired by my brother, Geo. W. Scott, one of the heirs, part of which the Overlands now occupy and own, containing 1100 acres of land more or less, to identify the said land the same hereby conveyed the grant to my father, Wm. Scott, the division including the field notes and all other papers relating to the same are made a part of this deed."

In 1861 William H. Williams conveyed it to Campbell by the same description. At the time these last two deeds were executed the deeds from George W. Scott to Overland and Wright, respectively, were on record. It is contended that this showed a recognition of and acquiescence in this north 5 degrees east line as the division line between the two tracts by Mrs. Williams and her vendee, and, further, that by these facts Mrs. Williams and all persons claiming under her, including appellees, are estopped to deny that this line is the true division line between their respective tracts. If Mrs. Williams in her deed had called for the line of the Overland tract as the dividing line, there would be much force in this contention. This would, of course, have authorized the assumption that she knew that this line ran north 5 degrees east from the cypress, and that she recognized this as the dividing line. This effect can by no kind of reasoning be given to the reference to the Overland tract in her deed. This reference only authorizes the assumption that Mrs. Williams knew that her brother had sold a portion of his tract to Overland, which he was occupying. That she stands by the partition previously made among the heirs, and intends to convey the land so allotted to her, is clearly shown by the recita-

tions in her deed. She refers to the land conveyed as "that part of said league set apart to me as one of my said father's heirs under and by virtue of a partition effected between said heirs," and she makes a part of the deed "the division, including the field notes and all other papers relating to the same." This evidently refers to the Carson field notes of this tract above referred to which were shown to have been delivered to the successive owners and kept with their deeds. These field notes, as stated, appear to have been made in 1843 by Carson, and show this line to run north 12 degrees east from the cypress tree. It may be remarked here that in the deed from Mary Jane Scott, one of the heirs, made in 1858, conveying her interest, it is recited that the description given of the land conveyed "is according to a survey made by John Carson in 1843." It is true that there was a good deal of evidence introduced tending to show that there was an old marked line along this north 5 degrees east line; and while there was some evidence of old marks on the north 12 degrees east line, it appeared that the north 5 degrees east line was better delineated by old marks than the other, but these old marks were not conclusive in establishing the fact that they marked the division line as agreed by Mrs. Williams and George W. Scott. There was also some evidence tending to show that Overland was actually occupying up to the north 5 degrees east line probably prior to 1860, when Mrs. Williams made her deed, but the evidence on this point was conflicting; the testimony of some of appellees' witnesses tending to show that no part of the Overland tract west of the north 12 degrees east line had been actually occupied by him at the date of Mrs. Williams' deed.

[1] The evidence was not sufficient to raise the issue of recognition of, and acquiescence in, this north 5 degrees east line by Mrs. Williams, nor to raise the issue of estoppel upon her or her vendees. The vendees under the deed to Wright had no right to assume from the reference to the Overland transaction in Mrs. Williams' deed that she conveyed with reference to the line of the Overland deed, or that she by this reference recognized or acquiesced in the north 5 degrees east line as the division line between the two tracts. So far from any recognition of or acquiescence in this line being shown, the evidence repels such inference. George R. Davis, who bought 928 acres of the Sarah Williams tract in 1869 from Townsend, testified that Townsend showed him the lines and corners of the tract when he bought, and that the west line shown him by Townsend, the line in dispute, ran north 12 degrees east, and that he afterwards had a surveyor locate the lines and he located the line the same as Townsend had shown him. This testimony was corroborated by other witnesses,

and was undisputed. The only evidence of acquiescence, if it can be called that, is the reference in Mrs. Williams' deed to the ownership and occupancy of the Overland tract referred to. The only issues properly raised were as to whether there had been a partition and actual division on the ground, and where the dividing line between the Williams' tract and the George Scott tract was located by such division. This line, when so established and located, must be taken as the true boundary line between the lands of appellants and those of appellees.

It will not be necessary to discuss the several assignments of error. What we have said disposes of the first assignment, that the court erred in refusing to direct a verdict for plaintiffs. The evidence of a partition among the heirs, antedating any of the deeds by them, and in accordance with which division they each conveyed his part, was of such a character as to justify the court in assuming that such partition had been made. The evidence left as little doubt that the old field notes by John Carson, purporting to have been made in 1843, and which had been transmitted with the several deeds in the chain of title down to the present appellees, were the original field notes of the Sarah Williams tract in said partition.

[2] There was no error in sustaining appellees' objection to the evidence sought to be elicited from E. P. Hamblen by appellants referred to in the second assignment. This evidence was offered to support the plea of estoppel, but the effect of it was simply that Hamblen, after examining the title for Willard, vendor of appellants, advised him that the title was good. After all the plea of estoppel is based solely upon what is claimed to have been recognition of, and acquiescence in, the north 5 degrees east line arising out of the simple reference in Sarah Williams' deed to the Overland tract. The court did not err in excluding the testimony. This also applies to the evidence, the exclusion of which was made the basis of the third and fourth assignments.

We have been unable to find in the record the charge of the court of which appellants complain by their fifth assignment, to the effect that the uncontroverted evidence showed that the Scott heirs made or attempted to make a partition of the league. Appellants do not refer in their brief to the page of the transcript where such charge can be found. There would have been no error if the charge had been given. This disposes also of the sixth assignment of error, which presents the same point.

[3] There was, as we have shown, no evidence to raise the issue of acquiescence or estoppel. Certainly there was no evidence of such acquiescence up to about the year 1909; and, if there had been such evidence of acquiescence, it would not have justified the charge requested by appellants, the refusal

of which is made the ground of the seventh assignment of error, that such acquiescence would make said line the true boundary between the tracts, whether it was the true line originally run by the surveyor or not. The law is that such acquiescence affords a strong presumption that the line so acquiesced in is the true line. The weight to be given such evidence depends upon many circumstances, all of which are for the determination of the jury. Schunior v. Russell, 83 Tex. 96, 18 S. W. 484; Bohny v. Petty, 81 Tex. 528, 17 S. W. 80; Koenigheim v. Sherwood, 79 Tex. 508, 16 S. W. 23; Lagow v. Glover, 77 Tex. 451, 14 S. W. 141; Medlin v. Wilkins, 60 Tex. 409; Davidson v. Pickard, 37 S. W. 375.

[4] The case having been submitted on special issues, this charge in the form in which it was requested, directing the jury to return a verdict for plaintiffs in certain contingencies, was on that ground properly refused, even if otherwise proper. Moore v. Pierson, 100 Tex. 117, 94 S. W. 1132. This disposes also of the eighth assignment of error, presenting similar questions. There was nothing in the evidence calling for the charge requested, as set out in the ninth assignment of error, and the court did not err in refusing to give it. The evidence was conclusive as to a division between the Scott heirs prior to the execution of any deeds by them, and the court did not err in refusing to charge the jury, as set out in the tenth assignment of error, that the execution of such deeds operated as such partition. The heirs might have effected a partition in this way, but it is clear that they did not. Mrs. Williams' deed was not executed until 1860. Some of the other heirs conveyed their interests 15 years prior to this, and they all refer in their deeds to the former partition. The evidence did not raise the issue of limitation of either three, five, or ten years. The evidence set out in the brief of appellants in support of the eleventh assignment, complaining of the refusal of the trial court to submit special issues as to such limitation, refers to a possession of a portion of the George Scott tract remote from the land in dispute, and did not present the issue of limitation as to this part of the land.

By the twelfth assignment of error appellants complain of the action of the court in refusing to grant their motion for a new trial. The motion for new trial sets out 18 different grounds. The assignment is too general to require consideration. However, the only grounds urged by the propositions and statements thereunder are that the verdict is contrary to and not supported by the evidence. What we have already said fully disposes of this objection to the verdict and judgment.

We find no error in the record, and the judgment is affirmed.

Affirmed.

### Additional Findings of Fact.

In this case appellants request us to find whether or not George Scott ever agreed to the line running north 12 degrees east from the cypress at the mouth of Bridge gully as the west boundary line of the portion acquired by him in the Scott survey. There is in the record no direct evidence of such agreement. That there was such agreement, we think, necessarily results from the finding of the jury, upon sufficient evidence, that the league was by verbal agreement partitioned among the four heirs of William Scott in 1843 according to a survey or surveys made by Carson and that by this partition the east line of the Sarah Williams tract, being the division line between the Sarah Williams tract and the George Scott tract, ran north 12 degrees east from the cypress at the mouth of Bridge gully as shown by Carson's field notes of the Sarah Williams tract and by the old maps.