PARKINSON v. SEARS. (No. 2739.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 15, 1926. Rehearing Denied Jan. 5, 1927.)

1. Trespass to try title ⊚▭6(1)—Plaintiff in trespass to try title must show title to contested land.

In trespass to try title, plaintiff, having alleged in petition that defendant was wrongfully claiming certain strip of land as part of section 6 instead of section 7, had burden to prove title thereto and to prove that true location of section 7 would include such strip.

2. Pleading ⊚▭162—Matters set up in supplemental petition, in answer to defendant's answer, are not part of plaintiff's cause of action.

Matters set up in supplemental petition, which were expressly recited to be in answer to defendant's answer and matters therein pleaded, cannot be taken as part of plaintiff's cause of action.

3. Boundaries ⊚▭37(3)—Evidence held to support finding that boundary line as testified by county surveyor was true boundary.

Evidence held to support finding that boundary line between land of plaintiff and defendant as testified by county surveyor was true boundary, in view of variation of another claimed boundary line from true north, as called for by field notes in patent to survey.

4. Boundaries ⊚▭37(5)—Evidence held insufficient to show either agreed line or one established by recognition and acquiescence as boundary between plaintiff and defendant.

Evidence held insufficient to show either agreed line or one established by recognition and acquiescence as boundary line between property of plaintiff and defendant, where fence was not moved to such line.

5. Boundaries ⊚▭40(3)—Question of location of boundary line by acquiescence is one of fact.

While acquiescence by participants in boundary dispute is entitled to weight in ascertaining locality of line, question is one of fact and not one that in any given period of time will operate as an estoppel in law.

Appeal from District Court, Lubbock County; Hill Stewart, Special Judge.

Suit by Robert H. Parkinson against T. H. Sears. Judgment for defendant, and plaintiff appeals. Affirmed.

Rob't A. Sowder, of Lubbock, for appellant.
Vickers, Campbell & Schenck, of Lubbock, for appellee.

RANDOLPH, J. Appellant brought this suit in the district court of Lubbock county against appellee. Judgment was entered by the trial court in favor of appellee, from which judgment appellant has appealed to this court.

Plaintiff's petition is a formal action of trespass to try title, with an additional allegation that an issue of boundary is involved in the suit "as he is informed."

Defendant's answer consists of a general demurrer, general denial, plea of not guilty, and an answer to the merits, setting up recognition of line as a common boundary between sections 6 and 7 of block D2 as the true boundary line between said sections; also pleas of limitation of 3, 5, and 10 years.

The land in controversy is shown by the following sketch:

The fence indicated by crosses was built by George R. Bean about the year 1893. Bean testifies that this fence was erected by him without the assistance of a surveyor, and was purely a guess as to the true location of the line between the two sections.

Plaintiff's petition describes the lands sued for by him, as follows:

"Part of said section No. 7, block D2, Lubbock county, Tex., to wit: Beginning at a 1″ iron pipe set by Col. Smyth as the northwest corner of section No. 7, block D2, and the southwest corner of section 24, block D2; thence north 89° 30,' east 106.6 vrs. to a wire fence; thence in a southerly direction along said fence 1,845.2 vrs. to the corner of said fence; thence west

95 vrs; thence north 0° 24' west 1,845.2 vrs. to the place of beginning—containing 33.1 acres."

[1] Plaintiff, in his said petition, alleges that the defendant is claiming the above strip of land as being part of section 6, but further alleges that same is a part of section 7 owned by him. This being the status of plaintiff's cause of action, it devolved upon him to prove title to same and to prove that the true location of said section 7 would include the strip as contended by him. It is true that the plaintiff, in reply to the matters set out in defendant's answer, for the first time pleads that the fence placed on the land was placed there without reference to the dividing line between said surveys, and that at such time it was not known or recognized where the dividing line was located; that in 1903, H. D. Beal, who was then the owner of section 6, being desirous of fixing and establishing the east line of said section 6, caused a survey to be made of said section 6, at such time being also in possession of survey No. 7, and acting for the plaintiff, the then owner of said survey 7, with the express agreement and understanding that the lines so located by a there named surveyor should be taken as the true lines and boundaries of said section, and that in said year such survey was so made and recorded in the surveyor's records of Lubbock county, Tex., and that such survey placed the east line of section 6, which is the west line of section 7, as follows:

"An iron pipe set in earth mound for northwest corner section 7, and northeast corner section 6, and set stake and two stones in ground for common corner of south said two sections"

—and that thereafter the said Beal, by his instruments of record—being the agreements to so survey, and the field notes aforesaid—held out to all persons and to this plaintiff in particular that said iron pipe and such set stake and two stones were the common corner of such surveys, and thereafter openly and notoriously recognized same as such, and also pleaded in such supplemental petition acquiescence therein until 1921.

[2] The matters set up in said supplemental petition are expressly recited to be in answer to defendant's answer and to matters therein pleaded, and do not and cannot, under any rule of pleading, be taken as a part of plaintiff's cause of action.

"Under our system, * * * the plaintiff is required to make a frank, plain exposition of the grounds on which he seeks a judgment against the defendant; and if the application of the law of the land to the facts so stated, if true, will not sustain his action, the defendant can avail himself of such insufficiency, either by demurrer, motion in arrest of judgment, or on assignment of error. If there are any exceptions in the law, by which the plaintiff would have a right to recover, he must allege in his petition such exception." Long v. Anderson, 4 Tex. 422–426; Pettus v. Perry, 4 Tex. 486–490.

[3] Hence it is that the two questions, title and true location, as claimed in the original petition, must form the basis of any recovery sought by him.

There is no evidence offered by plaintiff as to the true location on the ground of the line in controversy as placed by the original surveyor. The field notes of the survey made by Holt in 1903 show that his survey was based on a survey made by Col. R. P. Smyth for Reed, Earhart, and others, and also on a survey of a line running west from the southwest corner of survey 1 in block D, made by Smyth and Holt, which survey was made from, and the variation of the line from the southwest corner of survey 1 in block A east 7 miles to a stone mound at the northeast corner of survey 70 in block RG, and all of Holt's work appears to be wholly based on Smyth's work. There is no evidence whatever in the record to disclose what Smyth did as to following the footsteps of the original surveyor. The field notes given for survey 7 in the patent to said survey, which is dated October 14, 1878, are as follows:

"In Lubbock county, known as survey No. 7 in block D2 on the waters of North fork, a tributary of the Brazos river, about 8½ miles north and 4 miles west from the mouth of Yellow House creek, by virtue of land script No. 3–358, issued to said company by the commissioner of the general land office, March 9, 1877, and transferred to J. M. Davis, October 11, 1877.

"Beginning at an earth mound, the southeast corner of survey No. 6 in this block; thence north 1,900.8 vrs. to a stake; thence east 1,900.8 vrs. to a stake; thence south 1,900.8 vrs. to a stake; thence west 1,900.8 vrs. to a mound."

It will be seen that the calls for course are for north, south, and east and west. Harris, the surveyor introduced by the plaintiff, testified that the Smyth line was run on a variation of 20° west, and was not run by a true north survey; that the work done by Smyth according to variation used by him would throw the line west of true north every mile he ran north of section 1, block A, about 11 varas, and in running north 8 miles they would swing something like 90 varas west of where the line would be if run on true north.

Smyth was not used as a witness to explain why he ran the line on a variation from the true north, and there is no explanation in the record as to why this was done. Harris testified that the Smyth line at the northwest corner of 7 was west of the line run by him (Harris) some 111 varas; that the line he ran was run according to true north; that the original surveyor's field notes to the land lying north of survey 1, block A, called for the lines to run north, south, east, and west; that on the east side of section 6, according to his running of the line, the fence was prac-

tically on the north and south line at the northeast corner of 6 and northwest corner of 7.

This evidence authorized the finding of the jury that the line runing north and south as testified by Harris, county surveyor, on February 10, 1921, was the true boundary line between sections 6 and 7.

[4] Notwithstanding plaintiff's plea of agreement and acquiescence in the Smyth line by the plaintiff and H. D. Beal, the then owner of section 6, is contained only in his supplemental petition, and is in reply to matters and things set up by the defendant, we will consider same so far as to call attention to the total lack of evidence to support same.

H. D. Beal testified substantially:

"I am the same H. D. Beal who was owner of sections 6, 8, 9, and 10, block D2, and 33 and 40 in block D, all in Lubbock county. I am the same H. D. Beal who was concerned and for whom was made a survey by C. W. Holt, in May, 1903, of certain boundaries of such land. I accompanied the surveyor in running the northern and southern boundaries of surveys 6 and 7 and the western boundary of survey 6. I do not remember of ever having seen the southwest corner of 6 since that time. The fence along or near the west line of 6 was east of such stone at the southwest corner of 6. I don't remember when the fence was placed on the ground, as it was there when I moved to Lubbock county, in 1898, nor do I know of my own personal knowledge who placed the fence on the ground. I am sure I first leased survey 7 belonging to Parkinson in 1898, the year I moved to Lubbock county, and kept it leased all the time, or nearly all the time, until about 3 or 4 years prior to the time I left that county. I do not know who put up the fence between 6 and 7, as it was there when I moved to Lubbock county in 1898. It was taken down during the time I lived there, but I don't remember who took it down, whether I did or whether T. O. Earhart took it down. I sold the section 6 to a Mr. Linscott, who erected a fence on the same line where the old fence had stood. T. O. Earhart was living on section 6 when I moved to Lubbock county in 1898. I do not remember just how long he held possession of it after I moved there. I don't know in what year the fence was set up between sections 6 and 7, as it was there when I moved to Lubbock county in 1898. It was a three or four wire fence, don't remember which; nor do I remember the distance between the posts. I had section 7 leased as tenant of Mr. Parkinson."

The plaintiff, Parkinson, testified:

"I am the same Robert Parkinson to whom J. M. Davis, patentee, conveyed section 7, block D2, Lubbock county, Tex., on April 4, 1892. I have no recollection of having heard of Smith Shaw or A. M. Clayton before this suit was filed. I did hear of T. H. Sears some time during 1921, and, so far as I remember, that is the first time I heard of him. I leased section 7, by lease in writing, for a number of years, beginning December 1, 1904, to Henry D. Beal, of Lubbock, Tex. I have no recollection of leasing it to others. * * * I know that I leased this same section to the same H. D. Beal during subsequent years, and now have in my possession leases executed by the said Beal and executed in my behalf by E. M. Powell, who then had charge of my real estate in Lubbock county, covering the period from June 1, 1913, to June 1, 1915, and from June 1, 1915, to June 1, 1918, respectively. * * * In leasing land to Beal in 1903, and in all leases to him thereafter, and in the exchange above mentioned, I relied upon the boundary for the sections recognized and asserted by Beal during those years. Such information is based largely on my dealings with Beal and on what I learned through my agent, Powell. The information came to me relative to the survey having been made about 1903 by the different owners to determine the boundary in the ordinary course of business, and understanding, as I did, that the survey upon which Beal was then relying was not disputed, I took no precaution to preserve any writing identifying the survey upon which Beal relied. So far as I remember, it was a survey made about or shortly prior to 1903, and acquiesced in in every sense by Beal and others owning land in that vicinity. The first time I can remember having heard any hint or suggestion that the boundary established as stated was questioned was in 1921. My recollection is that I understood, prior to 1907, that section 6 was owned by H. D. Beal, but I cannot state that I ever knew the fact in any such way as would qualify me to testify to it. I never knew of its being owned by any one else at that time, and had understood it was owned by him down to some time subsequent to my exchange with him of sections above mentioned.

"I have never resided in Texas, I have been in the state for a short time at intervals before and since 1903. I have understood, ever since I owned section 7, that section 6 was adjacent thereto and immediately west thereof; I think I have understood that there was a division fence between 6 and 7 for many years. My recollection is that I understood that some one was in possession of section 6, and that it belonged to H. D. Beal, and that he was, during the years I was leasing section 7 to him, and prior thereto, holding the lines of the section as described in my direct examination, and that he continued to do so down to the end of my lease to him in 1918. I do not know of any one else than H. D. Beal being in possession of section 6."

It will be seen from this evidence that, at the time Beal took possession of survey 6, the fence was then in existence which Bean had put up, and, so far as the record discloses, Beal's possession extended to the fence; that, when Beal leased section 7 from the plaintiff, he leased it without any conduct on his part to indicate that he did not claim to the fence; that for some reason he joined in with other parties in 1903 in having the Holt survey made which placed the line where Smyth had surveyed it, approximately 106 varas west of the fence. In his testimony there is no expression that indicates that from and after such survey was made he claimed the Smyth-Holt line for the true boundary. With a slight interval, the fence continued where it

was placed by Bean up to the time Beal left Lubbock county, and there is not one word from him (Beal) to indicate his abandonment of the fence line.

The fact that the plaintiff, in leasing the land to Beal, relied upon the boundary for the sections recognized and asserted by Beal during those years, upon information based largely on his dealings with Beal, or on what the plaintiff learned through his agent, Powell, does not establish an agreed or recognized boundary line. The fact that a survey was made in 1903 and acquiesced in by Beal and others owning land in that vicinity does not establish such survey as a recognized boundary line. The plaintiff nowhere testified to any agreement with Beal, or any admission by him, that such survey made in 1903 was thereafter to be the boundary line between sections 6 and 7. If, when the 1903 survey was made, the fence had been moved by the then owners of the land to the Smyth line, an entirely different question would be presented here. Then there would have been an affirmative act recognizing the line as the boundary. Bohny v. Petty, 81 Tex. 524-528, 17 S. W. 80.

It will be seen that the plaintiff in his supplemental petition sets up, first, an agreed line, and, second, a line established by recognition and acquiescence. Neither of these pleas are supported by the evidence, as will readily be seen from the testimony of the only parties interested who testified as set out above.

[5] While acquiescence by the participants is entitled to weight in ascertaining the locality of the line, the question is one of fact and not one that in any given period of time will operate as an estoppel in law. Bohny v. Petty, supra. Other things than the mere lapse of time enter into the consideration of the question. Floyd v. Rice, 28 Tex. 341, 344; Koenigheim v. Sherwood, 79 Tex. 508, 513, 16 S. W. 23.

Holding that the evidence justified the jury in locating the true boundary line according to the Harris survey, we affirm the judgment of the trial court.