## J. H. SIMPSON v. MARGARET FOSTER.

1. AMENDMENT—PLEADING.—The right to amend pleading is limited, as to the answer, by the rule that the defense must be filed in due order of pleading.

2. SAME—DUE ORDER OF PLEADING.—Where a plea has been inadvertently filed, and it thereby cuts off a substantial defense, the court should, on proper application, allow such plea to be withdrawn, to enable the defendant to plead his several defenses in due order of pleading.

3. PARTIES—LEGAL TITLE.—Where suit was brought by the legal owner of a promissory note, executed for the purchase-money of a tract of land, the legal title to which was in the vendor, in trust, the defendant cannot plead in abatement the non-joinder of those equitably interested in the purchase-money for which the note was given.

4. TENDER OF CONFEDERATE MONEY.—A tender of Confederate money will not affect the liability of the maker of a note, whether made to an agent or to the holder of the same.

5. CONFISCATION LAWS.—Nor will a non-resident owner of a promissory note be in any way liable for loss resulting to the maker of such note from the agent of the owner turning the note over to the Confederate States receiver, under the laws of the Confederate States during the war.

6. FOREIGN ADMINISTRATION.—A foreign executor or administrator cannot maintain a suit in this State, in virtue of his foreign letters testamentary or of administration.

7. SAME—PERSONAL PROPERTY.—A legatee, under a foreign administration, admitted to the ownership of personal property, may afterwards sue here in his own name for the property without the probate of the will.

8. SAME.—The fact that the will makes the executor sole legatee upon trusts declared, will not authorize suit to be brought by such foreign executor.

9. SAME.—Such executor could not execute a deed to pass land of the estate in Texas without probating the will in this State.

APPEAL from Lafayette. Tried below before the Hon. I. B. McFarland.

On September 6, 1854, G. T. Holman and others conveyed to Thomas S. Foster, by deed, seven hundred acres of land in Fayette county, Texas, and on October 3, 1854, Foster executed to Fred Tate a power of attorney to sell the land. By virtue of this power, Tate executed to Robert A. Ishe and J. H. Simpson a bond for title to said land, on February 4, 1860. The consideration for the land was $150 cash, and three notes of Ishe and Simpson, the first for $2,183.83, due in four months, the second for $2,333.33, due in twelve months, and the third for $2,333.33, due in two years, all bearing ten per cent. interest from date, and each of them being made payable to Fred Tate, at his office in La Grange, Texas.

The first note having been paid, and Thomas S. Foster having died at St. Johns, Florida, on June 16, 1866, Margaret S. Foster instituted this suit in the District Court of Fayette county, on February 26, 1873. In her petition, she alleged, in substance, that she was the widow of said Foster; that he had bequeathed to her, by will, "all his property—real, personal, and mixed"—and that she was his "sole legatee," and, as such, owns the two last-mentioned notes, upon which she brought suit. She averred her power and readiness to make a deed to the land, and carry out the provisions of said

title bond, upon the payment of the balance of the purchase-money, etc.  She also alleged that Robert A. Ishe was dead, and his heirs unknown, and asked for judgment for the money due on said unpaid notes, with foreclosure of vendors' lien on said land, with order of sale, etc.

At the return term, the appellant, Simpson, filed a general demurrer and general denial, and on November 23, 1874, he filed a plea in abatement and amended answer, in which he alleged that the case could not proceed for want of proper parties; that Thomas S. Foster only held the legal title to said tract of land in trust for the mercantile firm of Bar-kroft & Co., of the city and county of Philadelphia, and State of Pennsylvania, and that the names and present residences of the members of said firm were not known to defendant, but were well known to the plaintiff.  Further answering, that he had paid the first of said notes at its maturity, and that on the — day of ———, 1861, he had brought the money to La Grange, to pay the second of said notes, (the third not being then due,) and tendered the same to said Fred Tate, and that Tate refused to receive it, and informed Simpson that he had turned over the two notes sued upon in this action, to the receiver of the Confederate States.  He further charged that Fred Tate, the agent of the said Thomas S. Foster, did, on the — day of ———, 1861, wrongfully turn over both of said notes to the receiver of the Confederate States; and that by this wrongful act of Tate, the defendant, Simpson, was compelled to pay to the authorities of the Confederate States, in the year 1863, the principal and interest then due on said two promissory notes, amounting to the sum of $5,366.66, in Confederate States treasury notes, and that said sum of Confederate money was then worth the sum of $3,000 lawful money of the United States, which last-mentioned sum he plead in offset and reconvention.

This cause was tried in the court below, on November 25, 1874.  The motion of plaintiff to strike out the plea in abate-

ment and amended answer, was sustained, and the ruling excepted to; the verdict and judgment being in favor of plaintiff, and a new trial refused, Simpson appealed.

The additional facts necessary are in the opinion.

*Timmons & Brown*, for appellant, cited Story on Ag., sec. 452; Wright *v.* Calhoun, 19 Tex., 421; Paschal's Dig., arts. 3709, 3710; Paschal *v.* Achlin, 27 Tex., 173; Johnson *v.* Brown, 25 Tex. Supp., 126; Jones *v.* Taylor, 7 Tex., 240; Cooper *v.* Singleton, 19 Tex., 260; Demaret *v.* Bennett, 29 Tex., 262.

*Moore & Ledbetter*, for appellees.

MOORE, ASSOCIATE JUSTICE.—The 34th section of the act to organize the District Courts (Paschal's Dig., art. 54) does not give parties an absolute and unconditional right to amend their pleadings at any time before they announce themselves ready for trial. The amendment must not only be made under the direction of the court, and upon such terms as it may present, but the right or privilege of thus amending cannot be exercised in direct conflict with other plain provisions of the same act. (Paschal's Dig., art. 144.) The right to amend the pleadings is conferred in no more positive or plainer terms, than are defendants', who plead several matters for their defense, required to file their pleas at the same time, and in due order of pleading. While our statute allowing amendments is certainly unusually liberal—so much so that, counsel say, it "was no doubt designed to do away with much of the nonsense and 'due order' of the technical pleading"—it certainly cannot be held that a party is entitled, as matter of right, to file his defense, except in the due order of pleading. Unquestionably, if a plea had been inadvertently filed, and thereby cut off a substantial ground of defense, the court might and should, on a proper application, permit such plea to be withdrawn, to enable the defendant to plead his several defenses in the due order of pleading;

and, if the court allowed an amendment to be filed out of the due order, without the previous pleas having been withdrawn, although irregular, it might not be a material error, for which the judgment should be reversed.

Aside, however, from the objection to the time and manner of filing the plea in abatement, appellant has no cause to complain of the action of the court in reference to it. The matters stated were altogether irrelevant to the case before the court. The plea does not deny, but, on the contrary, directly avers, that the legal title to the land, was in Foster when appellant purchased. And it is not pretended that the legal title had become vested in any way in these alleged *cestui's que trust*, who, it is claimed, should have been made parties. If appellant had performed his part of the contract and gotten a deed from Foster before his death, it would certainly have been unnecessary for the parties having, as it is insisted, an equitable interest in the money for which it was sold, to have joined in the deed, in order to perfect title. If the legal title was conveyed to Foster with their consent, to enable him to control and sell the land, and he made a *bona fide* sale of it, unquestionably the parties interested with him, and at whose instance this was done, could look only to him or his heirs and legal representatives for their interest, and not to his vendee.

The exceptions to so much of the amended answer as alleges a tender of Confederate treasury notes to Tate, the payee of the notes, (who, as appellant well knew, was the mere trustee of Foster,) and as such sets up claim for damages, by reason of the surrender of the notes by Tate to the Confederate States receiver, were properly sustained. These defenses were altogether frivolous. Confederate treasury notes were not a legal tender in payment of debts. If the notes had been payable to Tate in his own right, instead of as an agent, it is unnecessary for us to say he might have refused to receive them, if he thought fit to do so. And if appellant ever paid the principal of the notes to the Confederate States

receiver, it was entirely voluntary, as he was only required by the confiscation acts of the Confederate States to pay the interest. Appellant does not insist that the payment of the notes to the receiver was a discharge or satisfaction of the debt. And certainly it cannot be even plausibly claimed that this has been indirectly done, by holding the non-resident creditor responsible in damages to the amount so paid, because of the obedience of his agent to the law, to which both he and the debtor were, at the time, alike amenable.

There is, however, another ground of error, apparent in the record, of an altogether different character, for which the judgment must be reversed. The notes sued upon were payable to Tate, and though, as is alleged by appellee, they belonged to Foster, he would, ordinarily, have been required to bring suit upon the notes merely in Tate's name, for his use. Upon averment and proof of his equitable right to the notes, and especially in connection with the absence of Tate from the country, or his death, &c., he could, under our blended system of law and equity, have brought his action in his own name. And, if appellee had probated his will in this State, it is true, she might, as executrix, have maintained a similar suit.

At the time of his death, Foster was a citizen of the State of Florida. His will seems to have been duly probated, according to the laws of that State. Administration upon his estate, it is not controverted, was regularly committed to appellee there, in accordance with the provisions of the will. This will has never been probated in Texas, and there has been no grant of administration upon his estate in this State.

It is needless to say that the general rule, that a foreign executor or administrator cannot maintain a suit in this State, in virtue of his foreign letters testamentary or of administration, is as fully recognized with us as elsewhere. (Story Confl. Laws, sec. 513.) This proposition is not controverted by appellee's counsel. They insist, however, that the notes, being personal property, notwithstanding the debtor

resided in this State, could be disposed of by will, in accordance with the law of the domicile of the creditor, as this is not forbidden, nor in conflict with the law or policy of this State. We are not at all disposed to cavil with this proposition, and admit, if personal property is bequeathed by a specific legacy in a foreign country, and the legatee, under an administration there, is admitted to the ownership, he may afterwards sue in his own name for the property here, without the probate of the will, (Story's Confl. of Laws, sec. 516;) but, to maintain such a suit, the plaintiff must unquestionably show that the title or right to the property has passed to and fully vested in him; and that he is entitled to bring his suit in his own right, and not in a trust or representative capacity, by virtue of a foreign appointment.

Unquestionably, appellee does not show herself within this rule. The copies of the will do not show that she is entitled to these notes, as legatee, or that her ownership of them, as such legatee, has been admitted under the administration on Foster's estate in Florida. For aught that can be said, from the record before us, the entire estate may be required to discharge its liabilities; and so far from her having a specific right of property in these notes, as legatee under the will, it plainly shows, as we think, directly the contrary.

The will commits the entire management of the estate to appellee, and appoints her sole executrix during her life. It is true, the testator also bequeaths to her his entire estate, both real and personal, but this is upon the trusts declared and set forth in the will. To fulfill these trusts, she is directed, as soon as can be conveniently and advantageously done, after the testator's death, to convert the entire estate, with the exception of a few enumerated articles, into money, and to invest it in Government securities, or such other securities as she should think safe. Now, certainly, appellee does not get these notes in her own right, but must have them for collection, either as the executrix or trustee for the legatees. The ultimate interest which she has in her own

right, is merely the yearly interest received from the securities in which she shall invest the money realized by the conversion of the property of the estate, as directed by the will, or a certain yearly allowance out of it for her life. She is given no immediate property, in her own right, in the notes. She holds and must collect them, not in her own right, but in order that she may fulfill and carry out the provisions of the will. This she cannot not do in this State until the will has been probated, as is required by its laws.

When appellant pays the notes, he will be entitled to a valid deed for the land. In her petition, appellee alleges her willingness and ability to make such a deed; but evidently she cannot do so until the will is probated here. The answer, however, did not allege, with sufficient particularity, the defects in appellee's title, or show wherein she was unable to make a valid deed. Consequently, if appellee had not failed to show a right to maintain her action, there would have been no good ground shown for the reversal of the judgment.

REVERSED AND REMANDED.