R. S. SIMPSON, ADM'R, v. THOS. J. KNOX, ADM'R.

(Case No. 3197.)

1. NON-RESIDENT — JURISDICTION OF PROBATE COURT. — The probate courts of Texas have jurisdiction over the assets of a non-resident, who, dying at his domicile, leaves credits in this state. Jones v. Jones, 15 Tex., 465; Green v. Rugely, 23 Tex., 539.
2. LAWS OF THE DOMICILE — DISTRIBUTION OF PERSONAL PROPERTY — JURISDICTION. — The laws of the domicile direct and control the distribution of the movable property of the intestate; but when the jurisdiction of a court other than that of the domicile has been in-

voked in the administration, such administration is governed in its proceedings, in its beginning, progress and close, by the laws of the country granting such letters; and administration in Texas cannot be controlled in its mode of collecting the assets of an estate by the courts of the domicile of the deceased. Wilkins *v.* Ellett, 9 Wallace, 740; Story's Con. L., 509–513, 514, 516, 518; Pas. Dig., 5490.

3. Interest — Administrator chargeable with, when he resists.— In a suit against an administrator he may save interest by tendering into court the money remaining in his hands; but if he resists the proceedings of one entitled thereto, it is proper to charge him with interest from the time the money should have been paid over, or demand made.

4. Classifying claim against an estate.— Where suit was pending at the date of the defendant's death, and was continued by his administrator, the proceedings are such an exhibition of the claim as will warrant the grading of it in the judgment rendered thereon.

5. Defense not good.— See this case for a defense to an action held not good.

Appeal from Burleson. Tried below before the Hon. A. S. Broaddus.

December 26, 1870, B. H. Knox sued in the court below, as the administrator of the estate of Sarah Knox, deceased, in the state of Texas, to recover of E. C. Knox, former administrator of the estate of Isaac J. Knox, and John Ewing and William F. Grant, sureties on his official bond as such administrator, for the sum of $7,424.75, with legal interest thereon from the 31st day of May, A. D. 1869. B. H. Knox having died, T. J. Knox was appointed administrator *de bonis non.* The letters of administration were issued by the probate court of Brazos county, Texas.

The petition substantially alleged that, in an administration in Burleson county, Texas, the defendant, E. C. Knox, as administrator of I. J. Knox, in the final settlement, had admitted assets and funds on hand, going and belonging to the estate of Sarah Knox (plaintiff's intestate), in the sum of $7,424.75, which sum, in the order discharging said E. C. Knox, was directed and ordered to be paid to one Thomas Lanier, who was administrator of the estate of said Sarah Knox in Pickens county, state of Alabama. That said money never had been paid to Lanier, but is still owing the

estate of Sarah Knox; that Lanier and his sureties are insolvent, and largely indebted to the heirs of said deceased. That five of seven of the heirs of said Sarah Knox reside in, Texas; that it is feared that the administrator, E. C. Knox, may pay or make some settlement with said Lanier, to defeat this suit, and defraud the estate represented by plaintiff; that should defendant, E. C. Knox, pay the fund to Lanier, the estate of Sarah Knox would lose the said money entirely; prayer was for an injunction, which was granted and issued.

The defendants answered by general demurrer and denial, and on August 12, 1871, filed a special plea setting up proceedings had in September, 1870, in the probate court of Pickens county, Alabama, as affecting this fund sued for. The substance of the answer, as set out in the brief of the counsel for appellant, is as follows:

That Sarah Knox died in Pickens county, Alabama, the place of her residence, and that administration upon her estate was granted at the September term, 1858, of the probate court of that county, to Thos. C. Lanier, and that the administration granted in this state is ancillary only; that at the January term, 1870, Lanier was removed by the probate court of Pickens county, Alabama, and Stone appointed administrator in his stead; that at the September term, 1870, a final settlement and distribution of the estate of Sarah Knox was made among her heirs, after legal notice had been given, and the court in all things having jurisdiction of the parties and subject-matter; that among the property so distributed was the fund of $7,424.75, in the hands of the defendant, and for the recovery of which this suit is brought; that said decree is a final settlement of said estate, there being no debts against it, either in Texas or Alabama.

Attached to the answer is a transcript of the record of the probate court of Pickens county, Alabama, showing:

1. The grant of letters of administration upon the estate of Sarah Knox to Lanier, September 13, 1858.

2. Various proceedings appertaining to the management of the estate, which it is not necessary to recite.

3. On the 4th of December, 1869, certain creditors of the estate of Sarah Knox, deceased, filed their petition for the removal of Lanier from the administration of the estate. Various orders in reference to this application were made, until the February term, 1870, when an order was entered reciting that Lanier had been duly required by an order of the court, on or before the 14th of December, 1869, to give a new bond, which he had failed to do, and removing him from the administration, and Stone was therefore appointed administrator *de bonis non*, with bond of $1,000.

4. On the 8th of March, 1869, Lanier filed his account current, asking for a final settlement of his administration, and it was ordered that the matter of such settlement be set for hearing on the second Monday of April, 1869, and that notice of such settlement be given by publication for three successive weeks in the West Alabamian, a weekly newspaper published in the county, notifying all persons in interest to appear and contest if they think proper. On the second Monday in April, 1869, an order was entered, continuing the application to the second Monday in December, 1869. And the settlement was again continued to the 26th of September, 1870.

At a term held on the 26th of September, 1870, the application for final settlement came on to be heard. The order recited the appearance by attorney of B. H. Knox and Thos. J. Knox, and further recites: "And it appearing to the court that due and legal notice of the time, place and matter of this settlement has been given by publication in the West Alabamian, a weekly newspaper published in said county, for three successive weeks, according to the previous order of this court, by which publication all the parties in interest were brought before the court;" and then proceeds to state, audit and determine the accounts of the administrator, Lanier.

After ascertaining the amounts due and paid to each of the heirs, some of whom had received more than their share of the funds in Alabama, the order continues: "And it being shown to the court by proofs that there is a fund in

the hands of Everard C. Knox, as the administrator of I. J. Knox, deceased, late of the state of Texas, of Burleson county, amounting to the sum of $7,424.75, which fund the chief justice of the county court of Burleson county, state of Texas, which court has charge and jurisdiction of said fund of the estate of Isaac Knox, deceased, and was ordered and decreed heretofore that E. C. Knox, administrator as aforesaid, do pay to T. C. Lanier, as administrator of Sarah Knox, deceased, as aforesaid, in Pickens county, Alabama, said fund, to wit, $7,424.75, for the purpose of distribution and equalization of advancements among the heirs and distributees of Sarah Knox, deceased, and the said T. C. Lanier, administrator, as aforesaid, and the said L. M. Stone, as the administrator *de bonis non* of said Sarah Knox, deceased, in Pickens county, Alabama, consent that there be equalization among said distributees of the said Knox, deceased, out of said funds and moneys in the hands of E. C. Knox," etc. It then decrees that there shall be paid out of the said sum in the hands of E. C. Knox, administrator, various sums to the heirs of Mrs. Sarah Knox, so as to make equal their distributive shares.

Subsequently, on the 26th of November, 1874, the defendants amend their answer, alleging the partition and distribution of the estate of Sarah Knox, by the same decree of the probate court of Alabama.

On the 2d of December, 1875, the plaintiff demurs to the pleas filed on the 12th of April, 1871, and November 26, 1874, setting up the decree of the probate court of Alabama.

On the 3d of December, 1875, the defendants again amend, alleging that there were and are no debts existing in the state of Texas against the estate of Sarah Knox; that no part of the sum of $7,424.75 is required for the payment of claims against her estate in Texas or elsewhere, and that her estate was ready for distribution long before letters were issued in Texas. That the fund ordered to be paid to Lanier had been distributed by the probate court of Alabama, and that the whole of the fund of right belongs to

the defendant, E. C. Knox, and to Sarah Flowers, another of the heirs of Mrs. Knox.

The plaintiff, by amended petition, set up matters in avoidance. But as the pleas were stricken out, such matters of replication need not be stated.

Pending the suit W. F. Grant, one of the sureties of E. C. Knox, died, and his administrator, R. S. Simpson, was made a party defendant. December, 1875, demurrers to the special plea and amendments thereto were sustained, and the case was tried upon the plaintiff's pleadings and the general denial.

Judgment was rendered for plaintiff upon a verdict for $10,988.63, which was for the sum sued for, and eight per cent. interest.

Simpson, administrator of Grant, one of the sureties, alone appeals.

The errors assigned and relied on in the appeal relate, fourth and fifth, to the action of the court upon the exceptions of plaintiff to the special plea of defendants and the several amendments.

10. The verdict is excessive.

11. Error in classifying the judgment as a claim of sixth class against estate of Grant.

*Sayles & Bassett* and *Davis & Beall*, for appellant.

*John N. Henderson*, for appellee.

A. S. WALKER, J.— The principal question, as insisted by counsel for appellant, presented by the record is, "Do the matters set up in the defendants' several answers constitute a defense in this suit?"

This question involves the consideration of the rights and powers of Texas probate courts to control assets of a nonresident dying at his domicile and leaving credits in Texas.

An application for letters of administration was granted in December, 1869, by the probate court of Brazos county, Texas, to the original plaintiff. The regularity, necessity or propriety of the action of the court in granting this admin-

istration is not in this record questioned. The existence in Texas of assets gave jurisdiction over·them to the courts of this state. Pas. Dig., 1260; Jones v. Jones, 15 Tex., 465; Green v. Rugely, 23 Tex., 539. This jurisdiction is not dependent upon the existence or non-existence of any other administration at the place of domicile or elsewhere.

The administrator, so appointed had, under the law, the right to collect the debts owing the estate; to reduce to possession the assets subject to the authority appointing him.

His suit in the district court was properly, brought. Francis v. Northcote, 6 Tex., 187. His right to recover on the merits upon the pleadings and the testimony is evident. From the *final decree* of partition in the estate of I. J. Knox, acknowledging that $7,424 was allotted to the estate of plaintiff's intestate, Sarah Knox, nominally represented by Lanier, it is evident that the debt sued for was assets subject to the administration represented by the plaintiff.

It seems to have been conceded in the progress of the suit that Lanier, the foreign administrator, was not a safe, custodian of these funds. At least the allegation of his insolvency and that of his bondsmen contained in the bill seeking an injunction was not denied. From the answer and its exhibits it appears that Lanier in fact was largely indebted to the distributees of the estate on account of funds he had received.

As a mere suit to collect assets, the suit was legally brought, and it would seem to have been a necessary precaution for the safety of those interests in the estate that the injunction was granted.

The principal controversy, as stated before, arising in the case, and discussed in the brief of counsel, is upon ·*the sufficiency of the special plea* and the various amendments to it, and in the various forms the facts were pleaded, setting up *the decree* of the probate court of Alabama. The defense was held insufficient on exceptions.

It is not necessary to notice the details of the special plea or the merits of any of the items in it as independent facts in defense, for if the Alabama decree be a defense to any extent, it would be conclusive of the entire action.

The Alabama decree disposed of the fund sued for, and purported to have been made in an administration had on the estate at the domicile of the intestate.

If this decree acted directly upon the fund, having it within the jurisdiction of the court, then such adjudication would be final and the plea a bar in this suit.

An inspection of the copy of the decree made an exhibit to the answer (and forming the basis of all the excluded pleas) shows that *this fund*, at the date the decree was rendered, was in the state of Texas; that it had never been reduced to possession by Lanier, had not been charged against him in his administration; that neither Lanier nor the court appointing him had control of it, nor had attempted such control prior to that date.

As matter of fact, then, apparent on the face of the proceedings, the fund was not in possession of and subject to the disposition of that court. The jurisdiction of the court did not attach to the fund. Freeman on Judg., §§ 116, 608.

The direct control by the court of the property necessary to its disposition, or the jurisdiction over it, differs from the right conceded to the courts of the domicile to determine the course of descent and the final disposition of the residue left after payment of debts, etc.

It is not disputed that the laws of domicile direct and control the distribution of the movable property of the intestate; nor that ordinarily, by comity of nations, the final distribution of assets is conceded to the administration of the domicile rather than to ancillary administrations which may exist in other countries. Wilkins v. Ellett, 9 Wall., 740.

It is equally the rule that when the jurisdiction of a court other than that of the domicile has been invoked in administration, such administration is governed in its proceedings, in its beginning, progress and close, by the laws of the country granting such letters. Story, Con. Laws, 509, 513, 514, 516, 518, and cases cited; Jones v. Jones, 15 Tex., 465; Green v. Rugely, 23 Tex., 542; Pas. Dig., 5490.

The probate courts of Alabama have no extraterritorial authority. Though conclusive within their jurisdiction, act-

ing under their own laws, they are confronted in Texas by her local laws and her courts of probate with equal powers.

In December, 1869, letters of administration on the estate of Sarah Knox, in Texas, were granted to the plaintiff. From that date, the estate in Texas was represented by plaintiff, and not by Lanier. By the filing of *this* suit and the injunction against Lanier's obtaining the funds, the authorities in Texas exercised a further control over this fund. It was in litigation; its disposition submitted to the courts of Texas. The fund being under control of the orders of the Texas courts, their jurisdiction over it was, under the laws, full and exclusive. The grant of administration determined the *status* of the assets as subject to the administrator. The fund was in this condition when, in September, 1870, the Alabama court by its decree assumed, for it had no actual, control, and attempted to dispose of it.

Will it be contended that the Alabama court could oust the local jurisdiction so exercised by the courts of Texas over the fund in its actual control, by the exercise of its legal grant of administration?

We consider that the Texas court has the exclusive jurisdiction for the purposes of the grant of administration of this fund. It follows that the administration must proceed and be closed under the laws of the state.

This conclusion follows regardless of the validity or invalidity of the decree. In ascertaining the rights of those who were parties to it to the estate, it may, or may not, be final. That question is not presented. It is not examined, nor its effect considered, further than to ascertain that it is ineffectual to control the plaintiff in his collection of the assets within the jurisdiction of the court from which his authority is received.

We conclude, therefore, that there was no error in sustaining exceptions to the special answer of the defendants.

We hold:

1. That the administration in Texas cannot be controlled in its mode of collecting the assets of the estate by the courts of Alabama.

2. The effect of the decree as a partition rendered by the courts of Alabama in the administration of the domicile is in no way passed upon. If its adjudication be conclusive of the rights of the heirs, it may be used in evidence in the probate court, and will be respected. If not conclusive, its defects can then be met by those opposing its effect.

3. Aside from *the decree* there are no sufficient equities set up in defense to require the allowance of the claims sought to be asserted in the answer as a defense. The defense to the action is not good. Atchison *v.* Smith, 25 Tex., 231, and cases cited.

4. That interest was allowed is not error. The defendants resisted payment by every possible means. Had they tendered the money and sought protection by the court in such payment, interest would have been saved.

5. Suit against Grant was filed in his life-time. Such proceedings, continued by the administrator becoming party to the suit, is an exhibition of the claim such as to warrant the grading of the claim as was done in the judgment.

There being no error in the judgment below, it should be affirmed.

AFFIRMED.

Opinion delivered October 25, 1880.]