HARE v. PENDLETON.   (No. 2100.)

(Court of Civil Appeals of Texas.   Texarkana.
May 1, 1919.   On motion for Rehearing,
July 3, 1919.)

1. EVIDENCE ⚷80(1) — PRESUMPTION THAT
LAWS OF SISTER STATE ARE SIMILAR TO THOSE
OF FORUM.

In the absence of proof, the Court of Civil
Appeals must assume that the laws of Oklahoma
in a given respect are the same as the laws of
Texas.

2. EXECUTORS AND ADMINISTRATORS ⚷216(2)
—ATTORNEY'S FEE CHARGE AGAINST DECE-
DENT'S ESTATE.

In view of Rev. St. arts. 3623, 3624, lia-
bility for attorney's fees incurred in the course
of administration of a decedent's estate is a
charge against the estate in favor of the attor-
ney, and not the personal obligation of the ad-
ministrator, and may be presented and collected
by the party to whom payable like as any other
claim.

3. EXECUTORS AND ADMINISTRATORS ⚷521—
SERVICES IN CONTEST AS CHARGE AGAINST
ESTATE IN ANOTHER STATE.

Legal services rendered in a proceeding to
probate a will in Oklahoma, or in resisting the
contest of the probate of the will interposed by
decedent's heirs, cannot be made a charge in
favor of the attorney against the estate in the
hands of a Texas administrator, at least until
the Oklahoma executor, through whom the at-
torney seeks to go against the Texas administra-
tor by right of subrogation, has become invest-
ed with the credentials provided by Rev. St. art.
3276, specifying conditions to the right of a
foreign executor to apply and receive letters
testamentary in Texas.

4. WILLS ⚷434—PROBATE IN SISTER STATE
OF NO EFFECT ELSEWHERE.

Judgment probating a will in Oklahoma gave
such will no standing in Texas.

On Motion for Rehearing.

5. EXECUTORS AND ADMINISTRATORS ⚷2 —
POWERS GOVERNED BY LAWS OF STATE WHERE
PROPERTY SITUATED.

Whatever powers an executor or adminis-
trator appointed in one state may exercise over
property situated in another state is governed
by the laws of the latter state, each having the
absolute power to control administration of the
property of decedents situated within its bor-
ders.

6. EXECUTORS AND ADMINISTRATORS ⚷518(1)
—PREFERENCE OF FOREIGN ADMINISTRATOR
IN APPOINTMENT IN TEXAS PRIVILEGE
GRANTED ON APPLICATION.

The privilege given by Rev. St. arts. 3289,
3290, to a foreign personal representative to
receive appointment as such in Texas, is not a
grant of administrative power, but merely a
privilege to be invoked on proper application,
any administrative power deriving from appoint-
ment in Texas and qualification of the repre-
sentative according to the local law.

7. EXECUTORS AND ADMINISTRATORS ⚷523 —
PAYMENT OVER OF RESIDUE BY ANCILLARY
ADMINISTRATOR AFTER SATISFACTION OF LO-
CAL DEMANDS.

The common-law rule allowing an ancillary
administrator, after satisfying all local de-
mands, to pay the residue over to the domiciliary
representative of the estate, is not an absolute
requirement, but founded on a comity, which
the court of the situs has the discretion to
ignore.

8. EXECUTORS AND ADMINISTRATORS ⚷518(1)
—"ANCILLARY ADMINISTRATOR" DEFINED.

The term "ancillary," when applied to the
administrator of a decedent's estate, is not to
be taken as signifying a supplemental adminis-
tration in the sense that it is a part of and
connected with the principal administration in
the state of the domicile; the expression im-
plies no privity or official connection between
the two administrators.

[Ed. Note.—For other definitions, see Words
and Phrases, Ancillary Administrator.]

9. WILLS ⚷433—FOREIGN WILL EVIDENCE OF
OWNERSHIP WITHOUT PROBATE EXCEPT AS TO
REALTY.

A foreign will can be used in the courts of
Texas as evidence of the ownership of property
before recorded in the county court or probated
in Texas according to Texas law, except as to
real property situated in Texas.

Appeal from District Court, Grayson Coun-
ty; C. T. Freeman, Judge.

Suit by W. S. Pendleton against Silas
Hare, administrator of Samuel Bailey.
From judgment for plaintiff, defendant ap-
peals.   Reversed, and judgment rendered in
favor of defendant.

F. H. Reily, of Oklahoma City, Okl., and
J. A. L. Wolfe and J. H. Wood, both of Sher-
man, for appellant.

W. S. Pendleton, of Nowata, Okl., and J.
W. Hassell, of Denison, for appellee.

HODGES, J.   This suit was instituted by
the appellee, W. A. Pendleton, in the district
court of Grayson county, against Silas Hare,
administrator of the estate of one Samuel
Bailey.   The purpose of the suit was to re-
cover the value of attorney's fees for services
rendered to the executor of the will of Sam-
uel Bailey in Oklahoma.   The material facts
are as follows:   Samuel Bailey died in 1912
at his residence in Pottawatomie county,
Okl.   He left a will, in which he devised all
of his property to Sherman Spencer, a neph-
ew who was at that time residing in the
state of Wisconsin.   There were some col-
lateral relatives, but no wife or children.
By the terms of the will B. F. Hamilton, of
Oklahoma, was named an executor.   The es-
tate consisted of real and personal property
to the value of $6,000, situated in Oklahoma,
and personal property consisting of $54,000,
on deposit in the state National Bank of

Denison, Tex., and $1,700 in notes executed by a party who resided in Oklahoma secured by a mortgage on Oklahoma real estate. After the making of the will, and before Bailey's death, Hamilton, knowing of his appointment as executor, engaged the legal services of the appellee, who was a practicing attorney in Shawnee, Okl. The employment was made for the purpose of assisting in the proceedings to probate the will and in the conduct of the administration and settlement of the estate. A few days after the death of Bailey, F. H. Reily, another attorney residing in Shawnee, Okl., was employed by Hamilton to represent him in all matters concerning the estate. The two were not partners, but associated for that case, Pendleton being regarded as the leading attorney. The probate of the will in Oklahoma was resisted by Amelia Parker and others, collateral relatives of the testator, upon the ground of mental incapacity and undue influence. The contest was lengthy, and was prosecuted to the Supreme Court of the state of Oklahoma. The litigation, however, resulted in a judgment probating the will. Both Pendleton and Reily represented the executor in all of those proceedings, and no question is made as to the value of the services then rendered. A short time after the filing of the will for probate, and while the contest was still in progress, Hamilton ascertained the existence of the deposits and notes in the bank in Texas; and accompanied by Riley, one of his attorneys, made application to be appointed temporary administrator of the estate in Texas. After considerable litigation in the county and district courts of Grayson county an agreement was entered into by all of the parties interested, which provided, in substance, that the appellant, Silas Hare, should be appointed permanent administrator in the state of Texas to take charge of all of the Texas property, perform all the duties incident to that position, and hold the estate for final distribution among the proper parties when the contest then pending in Oklahoma was finally decided. Some time after the appointment of Hare as administrator, Spencer, the beneficiary under the will, settled with Amelia Parker and others, and the contest was ended. In the course of his administration in Oklahoma Hamilton paid out all of the funds in his hands without compensating either the appellee or Riley for the legal services rendered by them in that state.

It appears from the evidence that at the time the appellant was appointed administrator of the estate in Texas the parties interested desired to have final distribution made in Texas in order to avoid the inheritance tax required under the laws of Oklahoma. In the course of his administration the appellant settled up all the claims against the estate in Texas that had been presented for payment except some not involved in this controversy, and a claim of the appellee for $10,000 as the value of legal services rendered by him to Hamilton, the executor, in the state of Oklahoma. In February, 1917, the appellee presented that claim to the appellant for allowance, and it was rejected. This suit followed in an effort to establish the claim against the estate in Texas.

In a trial before the court judgment was rendered in favor of the appellee for the sum of $7,500, and the appellant, as administrator, prosecutes this appeal. While Spencer, the beneficiary under the will, was named as a party defendant in the appellee's original petition, he was never cited and is not concerned in the result of this proceeding, except in so far as it may diminish the residue to be paid over to him as legatee in the final distribution. It appears that the appellant had filed his account for a final settlement, and had been ordered to pay over a part of the funds in his hands to Spencer, and to retain an amount sufficient to cover this and other claims to await the result of pending litigation. There are some other facts material to be considered, not included in the foregoing statement, which will be mentioned in the course of this opinion.

The record shows that two administrations are still pending on the estate of Samuel Bailey—one in Oklahoma, under the will, with Hamilton as the executor; and the other in Texas, without the will, with the appellant as administrator. Hamilton, the Oklahoma executor, in the management of the estate in his hands, incurred a liability to the appellee for attorney's fees for legal services which, for the present, will be regarded as having been rendered for the benefit of the estate being administered by Hamilton. The facts present this question: Can such a claim, if reasonable, be made a charge against the estate of the same decedent being administered in Texas, when it is shown that the funds belonging to that estate in Oklahoma have been exhausted and that the executor is insolvent? Or, to state the question in a different form, can the estate in Texas be made to pay any portion of the expense of administering the estate in Oklahoma when it is not shown that any of the funds of the Oklahoma estate have passed into the hands of Texas administrator?

[1] The appellant has raised by demurrer some preliminary questions which should first receive attention. The first proposition asserted is that liability for attorney's fees incurred in the course of administration is the personal obligation of the legal representative, and cannot be made a charge against the estate in favor of the attorney rendering the service. The other contends

that legal services rendered in a proceeding to probate the will, or in resisting the contest of the probate of the will interposed by the heirs of the decedent, cannot be made a charge against the estate in any event. In passing upon these and other questions growing out of this controversy, we must assume that the laws of Oklahoma are the same as the laws of Texas, as no proof upon that subject was offered. The only provisions of our statute authorizing the legal representative of a decedent to charge the estate in his hands with expenses incurred for the services of an attorney are to be found in article 3623, which are as follows:

"Executors and administrators shall also be allowed all reasonable expenses necessarily incurred by them in the preservation, safe-keeping and management of the estate, and all reasonable attorneys' fees that may be necessarily incurred by them in the course of the administration."

Article 3624 is as follows:

"All such charges as are provided for in the preceding article shall be made in writing, showing specifically each item of expense and the date thereof, and shall be verified by the affidavit of the executor or administrator, and filed with the clerk and entered upon the claim docket, and shall be acted upon by the court in like manner as other claims against the estate."

[2] While these provisions seemingly contemplate that the allowance for reasonable attorney's fees and other expenses of administration shall be made directly to the legal representative, our Supreme Court has held that, inasmuch as the estate is the sole beneficiary of the liability incurred and must ultimately make payment, such claims may be presented and collected by the parties to whom payable, as other claims against the estate. Reinstein v. Smith, 65 Tex. 247; Portis v. Cole, 11 Tex. 157; Caldwell v. Young & Morgan, 21 Tex. 800; Jones v. Lewis, 11 Tex. 359; Adriance v. Crews, 45 Tex. 181; Price v. McIvre, 25 Tex. 769, 78 Am. Dec. 558; Gammage v. Rather, Admr., 46 Tex. 105.

Counsel for appellant have cited a number of cases from other states, among them the state of California, which support the proposition that liability for attorney's fees in such instances is the personal obligation of the legal representative. But, under the authorities above referred to, we think the rule is otherwise in this state. The case of Reinstein v. Smith, supra, was one in which an effort was made by the original creditor to establish against an estate a claim for indebtedness incurred by the legal representative in operating a plantation. The question before the court was, could the estate be made responsible to him directly? In disposing of that question Justice Stayton said:

"If the administrator had, from his own means, paid out the sums of money and furnished the articles, for the purpose and as alleged by the plaintiff, his right to reimbursement would be clear, as would it had he obtained them upon his own credit. In our opinion, just as clear is the right of one who has furnished money or goods to an executor or administrator, upon the credit of an estate, to be used for such a purpose. Such a claim becomes a claim against the estate, which an executor or administrator may approve, and the probate court allow and cause to be paid, or upon which, in the event this be refused, a suit may be instituted in any court having jurisdiction."

It is true the court was discussing a claim for expenses incurred in the management of a plantation; but claims of that character are in the same category with "reasonable" attorney's fees which an administrator or an executor may lawfully incur in the management of an estate, and are to be proved and settled in the same manner. While some of the cases referred to above were decided under a former statute, the amendment thereafter adopted did not so alter the law as to change the equitable rule applied. In the cases of Houston v. Mayes, 77 Tex. 266, 13 S. W. 1036, and Richardson v. Kennedy, 74 Tex. 509, 12 S. W. 219, Justice Henry refers to article 3624 as pointing out a method of procedure that should be followed in establishing claims for the expenses of administration, and states the reasons for the distinction between these and ordinary claims. But there is no necessary conflict between the ruling there made and that announced in Reinstein v. Smith. At the time the latter decision was rendered the law was the same as it is at present. The purpose of article 3624 is to provide a method of procedure when claims for expenses in managing the estate and for attorney's fees are presented by the executor or administrator himself, and not by some third party. If the claimant be one other than the legal representative, there is no logical reason why the claim should not take the usual course provided by statute for allowing and establishing claims generally. Eastland v. Williams, 92 Tex. 113, 46 S. W. 32; De Cardova v. Rogers, 97 Tex. 67, 75 S. W. 17.

[3] Passing to the consideration of the second proposition: Were the services upon which the claim of appellee is founded such as could be made a charge against the estate of the decedent in any event? Both the pleadings and the evidence show that the principal part, if not all, of the legal services rendered by him to Hamilton, the Oklahoma executor, were in resisting the contest of the heirs at law to the probate of the will in that state. As will be seen, article 3623 of our statute limits the liability of the estate for such charges to "reasonable attorney's fees that may be necessarily incurred" by the legal representatives "in the course of the administration." But conceding that the services performed by the appellee were rendered in the course of the administration in the

state of Oklahoma, and might properly constitute a charge against the estate in the hands of Hamilton, the executor in that state, still does it follow that such services might also be made a charge against the administration in Texas? While the pleadings of the appellee may be treated as sufficient to constitute a legal proceeding to establish a claim against the estate being administered by the appellant, he admits in his brief and argument that he' can have no standing for a judgment upon that. claim in a court of law, and relies mainly upon the equitable right to be subrogated to whatever claim Hamilton may assert for reimbursement against the funds being administered in Texas. The rule invoked is announced in Norton v. Phelps, 105 U. S. 393, 26 L. Ed. 1072, as follows:

"Persons dealing with a trustee must look to him for payment of their demands, and,  * * * ordinarily, the creditor has no right to resort to the trust estate to enforce his demand for advances made or services rendered for the benefit of the trust estate. But, while this is the rule, there are exceptions to it; and where expenditures have been made for the benefit of the trust estate, and it has not paid for them, directly or indirectly, and the estate is either indebted' to the trustee or would have been if the trustee had paid, or would be if he should pay, the demand, and the trustee is insolvent or nonresident, so that the creditor cannot recover his demand from him, or will be compelled to follow him to a foreign jurisdiction, the trust estate may be reached directly by a proceeding in chancery."

After quoting the above from a Mississippi decision (Clopton v. Gholson, 53 Miss. 466), the court adds:

"The ground and reason for this rule are that the trustee has an equity of his own, for reimbursement for all the necessary expenses to which he has been put in the administration of his trust, which he can enforce by means of the legal title to the trust estate vested in him; and that his creditor, in the cases supposed of his insolvency or absence from the jurisdiction, may resort to the equity of the trustee, upon the principle of equitable substitution or attachment, for his own security."

The same doctrine has, in effect, been recognized and applied by the Supreme Court of this state. Caldwell v. Young et al., 21 Tex. 801.

But inasmuch as the attorney who performs the services can have no greater right than the executor would hold after having paid the fee, this important question remains to be answered: Could the executor in Oklahoma claim reimbursement from an estate being administered by the appellant in Texas, for expenses incurred in the administration of an estate in Oklahoma? We do not understand the rule announced above to go that far. It merely recognizes the right of an executor to reimburse himself from the trust fund in his hands, for the benefit of which

the legal services were performed or expenses incurred. In none of the cases examined by us has he been permitted to resort to funds in the hands of an independent trustee acting in a different jurisdiction. The common-law right of a trustee for reimbursement for expenses incurred by him in the execution of the trust grows out of his relation to the property placed under his control, not upon any implied contract with the grantor or testator, to be personally responsible therefor. His equitable lien is therefore logically limited to that property. Should this prove insufficient, he may call upon the cestui que trust for whose benefit the trust had been undertaken. 2 Perry on Trusts, §§ 909 and 910.

It is clear that neither the estate in Texas nor the administration here pending received any benefit from the result of the Oklahoma litigation. Establishing the will in the courts of Oklahoma gave it no standing in Texas; for when offered' for probate in this state as an instrument which had been probated in another state or upon an original application, it would still be subject to contest upon any grounds sufficient to impeach its validity. Article 3276, Rev. Civ. Stat.

Creditors holding claims against the decedent may resort to any jurisdiction where the estate is being administered, because of the privity existing between them and the estate from which their debts may be satisfied. But it is well settled that there is no privity between an executor in one state and an administrator controlling assets left by the same decedent situated in another state. Hill v. Tucker, 13 How. 458, 14 L. Ed. 223; Cherry v. Speight, 28 Tex. 516; Jones v. Jones, 15 Tex. 463, 65 Am. Dec. 174; Carrigan v. Semple, 72 Tex. 306, 12 S. W. 178; Green v. Rugely, 23 Tex. 539; Simpson v. Knox, 1 Posey, Unrep. Cas. 569. Each legal representative derives his commission from a different sovereignty, and is governed by different laws regulating the methods of procedure and allowances for the expenses of administration. Chapter 20 of our Revised Civil Statutes, which provides for the classification and payment of claims, recognizes three distinct classes: (1) Funeral expenses and expenses of last sickness; (2) expenses of administration and expenses incurred in the safe-keeping and management of the estate; (3) debts for which the decedent was liable.

But it is also contended that, under the provisions of article 3289, Hamilton had a legal right to qualify as executor in Grayson .county, Tex., and that he failed and refused to exercise that right for the fraudulent purpose of defeating the claim of' the appellee. It is true that the article referred to confers upon foreign executors, under certain conditions, the right to apply for and receive letters testamentary in this state. But in order to secure such official standing there

must be a compliance with article 3276, which requires the filing of a certified copy of the foreign will, together with the evidences of its probate in the other state. The same article also provides that in those proceedings the "validity of such will may be contested in the same manner as the original might have been." Thus the formal securing of letters testamentary in this state is made contingent upon the absence of a contest, or its failure. Article 3290 provides that, upon the grant of letters to a foreign executor, he shall enter into a bond, whether required by the terms of the will or not.

If the right of the appellee to resort to the funds in Texas depends upon the right of Hamilton to gain control of them for the purposes of administration and distribution, no such equity can arise till Hamilton becomes invested with the credentials provided for in the statute. While the law permits Hamilton to apply for authority to assume control of the administration in this state, he is under no legal obligation to do so. He has the option to refuse to undertake the additional burdens without impairing his legal standing in the state of his domicile. He cannot be charged with a fraud in failing to do that which he might legally refuse to do.

[4] The proposition that resisting the contest of the probate of the will in Oklahoma was a service which inured to the benefit of the estate in Texas is untenable, even admitting that such services may fall with the statutory designation of proper charges incurred in the course of the administration in Oklahoma; for if a will when offered here may be again subjected to the same contest that had been made against it in Oklahoma, and assailed upon the same ground, it is evident that the judgment probating the will in that state gave it no standing in Texas. We therefore conclude that the trial court erred in rendering a judgment for the appellee. The record is such as to authorize us to reverse that ruling, and here render a judgment in favor of the appellant, and it is so ordered.

### On Motion for Rehearing.

The right of the appellee to recover in this case depends upon the existence of some form of privity between the Oklahoma executor and the estate being administered by the appellant in Texas. The legal services which constitute the basis of this claim were rendered in the state of Oklahoma at the instance of the executor, and in assisting him in the performance of his administrative duties in that state. Assuming that those services were such as might be made a charge against the estate of the decedent in the state where rendered, the debt was primarily due to the executor, who controlled the estate, for he became personally responsible to his attorney for the payment of the fee; and upon that liability is founded the right of the execu-

tor to reimburse himself out of the funds in his hands. The legal right of the appellee to personally present and collect his fee out of the estate results from a situation which entitles him to be subrogated to the executor's right to reimbursement. The validity of appellee's claim against the estate, therefore, depends upon the existence of a valid and enforceable claim for the same debt in favor of the executor. Hence the attitude of the appellee in this proceeding is no better, and his debt is entitled to no more consideration, than the executor might claim had the latter paid the debt out of his own private funds and were now seeking reimbursement. The question, then, is, what form of privity exists between the executor in Oklahoma and the estate in the hands of the appellant in Texas? There are only two grounds upon which privity may be claimed: (1) That the property in Texas comes within the range of the trusteeship of the Oklahoma executor, and the debt is a part of the expenses incurred by him in performing his administrative duties, or (2) that the appellee, or the executor whom he served, occupies the position of a general creditor of the estate. As the basis of his argument in the motion for a rehearing the appellee asserts the following proposition:

"Under the law as applied to the facts of this case, the estate of Samuel Bailey in Oklahoma and in Texas constitute a single estate, and the Oklahoma executor, upon the probate of the will, became invested with the title to the estate in Oklahoma, and the right to the possession of the personal estate in Texas, subject only to satisfaction of Texas creditors."

This is not our view of the law. Under the provisions of our statute (article 3235), when a person possessed of an estate dies leaving a will, the title to his property vests in his legatees; and if he dies intestate the title vests in his heirs at law, subject to the claims of creditors, and to the right of possession by a duly appointed executor or administrator. Presumably the laws of Oklahoma are the same as ours upon that subject. The right of possession of the legal representative, however, entitles him to the custody and control of only that portion of the estate which is situated within the state of his appointment. The appellee quotes at length from Schouler on Wills, vol. 2, pp. 1142–47. After stating the general duties of an executor in disposing of notes and securities payable abroad and the diligence required of him to prevent loss, the author referred to says:

"And so, too, if he (the executor) may enforce the demand against the debtor without resort to the foreign jurisdiction. If, however, foreign letters and an ancillary appointment at the situs be needful or prudent in order to make title and to realize and collect such assets, the principal representative should perform the

ancillary trust or have another perform it, observing due diligence and fidelity according as the laws of the foreign jurisdiction may permit of such a course; and if in accordance with those foreign laws a surplus be transmitted to the principal and domiciliary representative, or otherwise transferred so as to be held by him in such capacity for payment and distribution, he will become liable for it accordingly. Whether, then, the principal or domiciliary representative be required pro forma or not to include in his inventory assets which come to his knowledge, either situated in the state or country of principal and domiciliary jurisdiction or out of it, his liability as to assets of the latter sort depend somewhat upon his means of procuring them and the fact of an ancillary administration in the situs of such assets. In any case he is bound to take reasonable means under the circumstances for collecting and realizing the assets out of his jurisdiction; nor is his liability a fixed and absolute one, but dependent upon his conduct; it is getting the foreign assets into his active control that makes a domestic representative chargeable as for the property or its proceeds rather than the duty of pursuing and recovering such assets."

The above appears to be the author's view of the common-law rule regarding the moral and legal duties of an executor towards foreign assets of his decedent. The closing sentence quoted indicates the conclusion that no legal liability on the part of the executor arises till he gets actual possession of the foreign assets. The test of privity in this case is, did the executor acquire any power over the assets in Texas by virtue of his appointment in the state of Oklahoma? not the power he might have acquired by seeking and securing an appointment in the state of Texas. His trusteeship is to be measured by the property which that appointment put under his dominion. In the case of Jones v. Jones, 15 Tex. 464, 65 Am. Dec. 174, our Supreme Court quotes approvingly the following language:

"Did an administrator represent the person of the intestate without qualification or restriction, the plaintiff's argument would be uncontrovertible. But it is clear that his commission extends only to assets of which the ordinary had jurisdiction; and it constitutes him a representative of the intestate no further than as regards the administration of those particular assets. His power is but coextensive with that of him from whom it is derived; and it is consequently incompetent, directly or indirectly, to affect assets which belong to another jurisdiction."

In Alexander on Wills (a recent work), vol. 3, p. 2105, the following is stated by the author as the substance of the judicial holdings on this subject:

"The principle is well settled that the power and authority of an executor or administrator over the estate of a decedent is confined to the sovereignty by virtue of whose laws he is appointed."

Judge Storey in his work on the Conflict of Laws says:

"It is exceedingly clear that a probate grant of letters testamentary or of letters of administration in one country give authority to collect the assets of the testator or intestate only in that country, and do not extend to the collection of assets in foreign countries; for that would be to assume an extraterritorial jurisdiction or authority, and to usurp the functions of the foreign local tribunal in that matter. It is no answer to say that the effects of the testator or intestate are assets wherever they are situated, whether at home or abroad. * * * This question is, not whether they are assets or not, but who is clothed with authority to administer them; and this must be decided by the local jurisdiction where they are situated, for the original administration has no extraterritorial operation."

That doctrine is fully supported by the following cases: Davis v. Phillips, 32 Tex. 564; Simpson v. Foster, 46 Tex. 618; Terrell v. Crane, 55 Tex. 81; Webster v. Clark, 100 Tex. 333, 99 S. W. 1019; Clarke v. Webster, 94 S. W. 1088; In re Estate of Crawford, 68 Ohio St. 58, 67 N. E. 156, 96 Am. St. Rep. 648; 11 R. C. L. pp. 439 and 531, and cases referred to in notes. It is true that in some instances it has been held that the executor or the administrator of the domicile may receive money from a foreign debtor in payment of the debt, and that his receipt will operate as a legal discharge of the obligation. He may also receive for administration in his own state personal property situated in a foreign state which is voluntarily delivered to him. But these rights are recognized only so long as there is no ancillary administration at the situs of the personal property, or in the state where the debtor resides. 11 R. C. L. p. 434, and cases referred to in the notes.

[5] Whatever powers an executor or administrator appointed in one state may exercise over property situated in another state is governed by the laws of the latter state on that subject. Each state has the absolute power to control the administration of the property of decedents situated within its own borders. Our laws do not confer upon one holding a foreign appointment as executor or administrator authority to perform any official act in this state, either in controlling property belonging to the decedent, or in forcibly collecting debts due the estate.

[6] The only recognition accorded to such representatives by our statute is a preference in receiving an appointment in this state when application is made therefor in order to get possession of property situated within our borders. Articles 3289, 3290, Rev. Civ. Stat. But that preference is not administrative power; it is a mere privilege to be invoked when the power is applied for. The power must come from the appointment by

the proper tribunal in this state and a qualification of the appointee according. to our local law. As held in the case of Webster v. Clark, above referred to, even the recording of a foreign will in Texas confers upon the party named therein as executor no authority to act as such with reference to property of the decedent in this state.

[7, 8] From the rules stated and the authorities cited it logically follows that the property of Samuel Bailey situated in Texas has never been brought within the range of the trusteeship of the Oklahoma executor. The common-law rule which allows the ancillary administrator, after satisfying all local demands of creditors, to pay the residue over to the domiciliary representative of the estate, is not an absolute requirement, but is founded upon a comity which the court of the situs has the discretion to ignore. Gaines' Succession, 46 La. Ann. 252, 14 South. 602, 49 Am. St. Rep. 324; Lawrence v. Kitteridge, 21 Conn. 577, 56 Am. Dec. 385; Andrews v. Avory, 14 Grat. (Va.) 229, 73 Am. Dec. 355; 11 R. C. L. pp. 441-2. The term "ancillary," when applied to administrations, is not to be taken as signifying a supplemental administration in the sense that it is a part of, and connected with, the principal administration in the state of the domicile. While the term is used to designate an administration in a state other than the domicile of the decedent, it implies no privity or official connection between the two. An ancillary administration may be commenced and conducted to close, and final distribution of the estate made, whether an administration exists in the state of the domicile or not, and without reference to those proceedings. Green v. Rugely, 23 Tex. 539.

The next question is, does the appellee in this case, or would the Oklahoma executor had the latter paid the debt, occupy the attitude of a creditor towards the estate in Texas? The contention that the estate of Samuel Bailey should be regarded as an entirety and indivisible, although situated in two different jurisdictions, is correct only in a qualified sense. As to the creditors of the decedent and the distributees entitled to the net residue, the estate should be treated as an entirety. But, as we have seen, for the purposes of administration it is divisible into as many distinct parts as there are states or countries over which the assets may be distributed. The appellee is not a creditor of the decedent, but of the legal representative who controlled the property of the decedent in the state of Oklahoma. His debt does not grow out of any service rendered to the decedent, or the estate generally, but results from legal assistance rendered to the Oklahoma executor in securing the probate of the will in that state. The claim, if allowed in that jurisdiction, would doubtless be classed as a necessary part of the expenses of that administration. Under the common-law rule it would be treated as an essential part of the expenses of executing the trust in that particular jurisdiction, and an equitable lien would exist in favor of the trustee for reimbursement against the trust funds that passed through his hands. But this lien extends only to the funds that have been, or are at the time reimbursement is sought, under the supervision and control of the trustee.

After a diligent search we have failed to find any authority for the proposition that one trustee may claim reimbursement for the expenses of executing his trust from the funds in the hands of another trustee controlling property derived from the same grantor. The debt and the right of satisfaction, in the manner stated above, grow out of the peculiar relations existing between the trustee and the trust property, and it would be illogical to say that the debt may be satisfied out of property not subject to that relationship. Under both the common law and our statute the expenses of executing such trusts as this constitute a preference claim against the estate, inferior only to claims for funeral expenses and the expenses of the last sickness of the decedent. A situation in which the entire trust property, when properly managed, is absorbed in paying only a part of these preferred claims, is so unusual and improbable that the law seems not to have contemplated that such a contingency would arise, and has made no provision therefor, unless it be in imposing a personal liability for the deficit upon the beneficiary of the trust. Our statutory provisions for the payment of the expenses of administrations clearly apply to those conducted in this state and under the direction of our courts.

But it is contended that in this instance the appellee performed a special service in securing the probate of the will in Oklahoma, which affected beneficially all of the property of the testator wherever situated, and for that reason the liability of the estate for the payment of his claim, whether presented by him or by the executor, should be equally as extensive. The argument is plausible, but is it sound? It was the duty of Hamilton, the party named in the will as executor, to propound that instrument for probate and to resist whatever contest was interposed by the heirs at law. He was also justified in employing the legal services of an attorney to assist him in the performance of that duty, and was authorized to bind the estate in Oklahoma for the payment of a reasonable attorney's fee; but did he have the power to also bind the estate in Texas? The only practical effect upon the property in Texas of probating the will in Oklahoma was in designating who should be the distributee of the surplus after the payment of all legitimate claims. To that ex-

tent the Oklahoma executor and his attorney performed services which operated upon the Texas property. That result, however, came as a mere incident to the execution of the trust in Oklahoma, and not as one of the purposes of that undertaking. The existence of an estate in Texas added nothing to the labors of the Oklahoma executor or of his attorney, or to the expenses of that proceeding. These would have been the same, and the same legal duty would have rested upon the executor to probate the will, had there been no property outside of the state of Oklahoma.

Attorney's fees incurred in probating the will, if allowed by statute, are in the same class with debts for other expenses and attorney's fees occurring in the course of the administration, which are provided for in article 3623. The fact that this claim is founded upon services rendered in probating the will entitles it to no more consideration, and gives it no broader scope for satisfaction, than would belong to a claim growing out of legal services for the exclusive benefit of the Oklahoma property rendered in the course of that administration. If the Texas property, therefore, can legally be burdened with this debt, it may with equal propriety be made to pay all of the expenses of the Oklahoma administration, whether they consisted of attorney's fees for the exclusive benefit of the Oklahoma property, or the cost of supplies furnished the executor in carrying on an Oklahoma plantation, or for his commissions for administering upon the property in Oklahoma. All such claims stand upon the same legal plane, and are entitled to equal consideration, in determining the range of liability for their payment. We know of no principal of law, either statutory or common, which would burden the estate being administered in one jurisdiction with the expenses of an administration conducted by a different legal representative in another jurisdiction.

It is also contended that, since the Oklahoma executor is authorized by our statute to apply for and receive the appointment as administrator in this state, it was his duty to take the legal steps required, and thus secure the possession of all the property belonging to the estate. It is alleged that his failure to do so was a part of a scheme adopted to defeat the payment of the appellee's claim out of the funds of the estate. Conceding that the charge of fraud on the part of the executor is true, does the existence of his evil motive change the attitude of the appellee toward the Texas property? If the fact of failure by the executor to receive the Texas appointment prevents the privity necessary to enable the latter to resort to the Texas property for the payment of the expenses of his administration, his notice is immaterial. There is no law which requires a foreign executor to seek an appointment in this state. If he fails to secure one, and as a result the assets in this state are lost, he is not responsible therefor on his bond. Purdy et al. v. Purdy's Adm'r, 42 S. W. 89; 18 Cyc. p. 190. The duty, if any, rests upon a moral obligation to prevent a waste of the assets; this does not require the executor to secure personal control of the foreign property solely in order that he may legally bind it for the payment of some particular claim. The record before us contains no complaint that the Texas assets were not being properly cared for and administered by the appellant, and there was no occasion for the Oklahoma executor to interfere.

Turning to another phase of the controversy, is the fact that the estate in Texas was beneficially affected by the probate proceedings in Oklahoma sufficient to create a liability against that estate? Strictly speaking, the property in Texas was not benefited by those proceedings. It was neither increased in value nor relieved of any of its burdens. The real beneficiary was the legatee named in the will; for, had the will not been probated, the property would have gone to the heirs. The principle of law which implies a promise of payment for a benefit bestowed creates only a personal obligation on the part of the beneficiary, and does not result in a lien on the property which happens to be the object of the beneficial services. It may be that in this instance Spencer, the legatee named in the will, should be held personally responsible to the appellee for the unpaid attorney's fees. If that be correct, why not sustain the judgment in appellee's favor? may be asked. It appears from the record that there will be a large surplus left in the hands of the appellant after the claims of all creditors are satisfied. Why not permit the claim of the appellee to be paid out of that surplus before making final distribution? The answer is that the appellant is the administrator of the estate of Samuel Bailey, and as such can pay only the debts of the decedent and the expenses of his administration. He has no authority to pay the debts of the heirs or the legatee entitled to the surplus. The liability of the legatee in this instance, if there be any, is purely personal, and is unattended with any charge on the property. It is in no respect different from a debt he may owe some other creditor, based upon an entirely different consideration. Administrations are not granted for the purpose of settling such debts. The fact that the legatee is insolvent, as is alleged in this case, adds nothing to the legality of the claim.

[9] It is proper to say that in disposing of this case on the original hearing some observations were made by the writer relative to the legal effect of the probate of a will in another state upon property of the testator situated in this state, which, upon further consideration, we conclude were erroneous and

misleading. That portion of the original opinion has been revised. The error was in the statement that a foreign will could not be used in the courts of this state as evidence of the ownership of property till the will had been recorded in the county court or probated here according to our laws. That is correct only as to real property situated in this state. Ochoa v. Miller, 59 Tex. 460; Lagow v. Glover, 77 Tex. 448, 14 S. W. 141; Hurst v. Mellinger, 73 Tex. 189, 11 S. W. 184. But the failure to make that distinction does not affect the conclusion then reached—that the services rendered by the appellee in securing the probate of the will of Samuel Bailey in the state of Oklahoma were not performed for the benefit of the administration in Texas, and cannot legally be classified as a part of the expenses of the latter proceeding. The fact that the property of the decedent situated in Texas is personalty does not enlarge the scope of the appellee's claim. His right to be paid out of that property depends upon principles of law which make no distinction between realty and personalty.

The motion for a rehearing will be overruled.