## WALKER et al. v. HALEY. (No. 497.)

(Court of Civil Appeals of Texas. El Paso. June 14, 1921.)

**Public lands &xdash;175(7)—Taking lease from state held not to estop patentee from claiming land under his patent.**

Where patentee of land from state had the boundaries as recited in the patent marked on the ground and went into possession, and thereafter resurvey by the state developed a vacant strip which was included in his original boundaries, conduct of patentee in leasing from the state such vacant strip, and having it surveyed for possible purchase, and transferring his lease to another, did not estop him from claiming the land as included in his patent as against one with full knowledge of the facts, claiming title through purchaser from state as an addition to the home tract, after application by transferee of lease as addition to his home tract was forfeited to the state.

Appeal from District Court, Brewster County; W. C. Douglas, Judge.

Trespass to try title by L. Haley against J. W. Walker; J. C. Bird, transferee of Walker, being made a party. Judgment for plaintiff, and defendants appeal. Affirmed.

See, also, 110 Tex. 50, 214 S. W. 295.

J. D. Martin, of San Antonio, for appellants.

Geo. M. Thurmond, of Del Rio, W. B. Teagarden, of San Antonio, W. Van Sickle, of Alpine, and Chas. Rogan, of Austin, for appellee.

## Opinion.

WALTHALL, J. This is an action in trespass to try title to about 30 acres of land in what is known as the L. Haley block of land, in Brewster county. The suit was originally brought by appellee, Lawrence Haley, against J. W. Walker. Pending the litigation and with knowledge of the suit appellant J. C. Bird bought the land in controversy from Walker, and by amended pleading was made a party in the suit and filed answer. Appellants' answers consisted of a general demurrer and pleas of not guilty. The defense asserted by appellants is estoppel. The case was tried with a jury, and, at the conclusion of the evidence, the court instructed a verdict for appellee, Haley.

At a former hearing this court refused to consider appellants' assignments of error touching the peremptory instruction for the reason that appellants, defendants below, presented no objection to the charge, being then of the opinion that the objection was waived under Acts of 1913, c. 59, and made

no findings of fact. The Supreme Court granted a writ of error on the ground of conflict between the decisions of the Courts of Civil Appeals upon the question, and reversed and remanded the case for a consideration of the assignments of error. Walker v. Haley, 110 Tex. 50, 214 S. W. 295.

## Findings of Fact.

1. On July 17, 1884, Haley bought 160 acres of land from the state, being the N. E. quarter of section No. 4, block No. 13, G., H. & S. A. Ry. Co. surveys in Brewster county, obtaining a patent therefor from the state; the field notes in the patent further describing the land as follows: Beginning at a rock mound for the northeast corner of said survey No. 4, and the northwest corner of survey No. 5, block 13, and the southwest corner of survey No. 23, block W. J. G. 8, from which a cedar bears S. 22° W. 42 varas; thence south 950 varas to a rock mound in the west line of survey No. 5, block No. 13; thence 950 varas to a rock mound; thence north 950 varas to a rock mound in the south line of survey No. 22, block W. J. G. 8; thence east 950 varas to the place of beginning.

2. Patent No. 460, vol. 27, was issued to Lawrence Haley by the state to survey 22, block W. J. G. 8, Texas Central Railway Company, dated January 13, 1904; the field notes further describing the survey as follows: Beginning at the S. E. corner of survey No. 21, made by virtue of certificate No. 779, issued to Texas Central Railway Company, and N. E. corner of survey No. 23, S. W. corner 24; thence west 1,900 varas to rock mound; thence south 1,900 varas to rock mound on south side of hill, from which a cedar 3 feet in diameter bears S. 85½° W. 154 varas; thence east and crossing Calamity creek at 1,110 varas and 1,900 varas to rock mound from which a cedar bears S. 22° W. 42 varas, the N. E. corner of survey No. 4, block No. 13, survey for the G., H. & S. A. Ry. Co.; thence north 1,900 varas to beginning.

3. Patent No. 42, vol. 72, of survey 23, block W. J. G. 8, was issued to Lawrence Haley, of date September 14, 1882, duly recorded. We need not give the field notes of this survey.

4. There is found in the record field notes to surveys numbers 1, 2, 3, 4, and 5, in block 13, G., H. & S. A. Ry. Co. We think we need not give the field notes to these surveys. These surveys were made in September, 1875.

5. When Haley bought quarter section No. 4 (a part of which is involved in this controversy), he had it surveyed and the lines and corners marked out and established on the ground. He identified, in his testimony, the rock mound fixed for the N. E. corner at the time the survey was made, also the cedar

tree, one of the bearing trees called for in the patent. The cedar tree was still there at the time of the trial. Haley also owns sections 22 and 23, block W. J. G. 8. For many years Haley had been in actual possession by enclosure of the N. E. ¼ of survey 4, block 13, and surveys 22 and 23, above described, until the occurrence of the circumstances hereafter stated. Sections 22 and 23, in block W. J. G. 8, tie on, by common lines and corners, to sections 4 and 5, in block 13, G., H. & S. A. Ry. Co. survey.

6. In 1889 the commissioner of the general land office sent Surveyor Ammerman to Brewster county to make a survey or resurvey of block No. 13. Ammerman made the survey of said block. His survey made a vacant strip of from 160 to 200 varas between blocks W. J. G. 8, and 13 G., H. & S. A. Ry. Co. surveys at section 4, in block 13, establishing different lines for block 13, and necessarily a different north boundary line for Haley's quarter section No. 4, in block 13.

7. In 1900 Haley leased from the state the vacant strip between blocks W. J. G. 8 and 13, for a period of 10 years.

8. In 1905 Haley made application to W. M. Harmon, county surveyor of Brewster county, for a survey of a portion of the vacant strip, beginning at the northwest corner of survey No. 1, in block 13, thence east with the north line of surveys 1, 2, 3, 4, 5, 6, 7, and 8, to the northeast corner of No. 8, block 13, and thence south, west, and north to the place of beginning, meandering and embracing the said vacant strip, and stating in his application for the survey that he desired said land surveyed with the intention of buying it. Harmon made the survey as applied for and described the land embraced therein by metes and bounds. Haley did not buy the vacant land from the state.

9. On the 1st day of May, 1907, Haley assigned and transferred to Arthur Thomas all of his right, title, and interest in and to the lease No. 31595.

10. On May 31, 1907, Arthur Thomas applied to purchase the land embraced in the lease from Haley as additional to his home section. On the Thomas application to purchase the land commissioner indorsed thereon on October 7, 1907, the land forfeited for failure to reside thereon and for collusion in the purchase.

11. On the 10th day of March, 1911, James W. Walker duly applied to buy the block embracing the vacant strip, including the land in controversy, as additional land to his home tract. The land was sold to Walker on the 14th day of March, 1911. On the 26th day of August, 1914, Walker filed with the land commissioner proof of three consecutive years of residence and occupancy on the land.

12. A lawsuit ensued between Arthur Thomas and J. W. Walker for the title and possession of that portion of the Haley block, which had been awarded to Thomas. The suit resulted in a judgment in favor of Walker, about the year 1912.

13. During the time Haley had the vacant strip under lease he paid rent to the state on the land. He paid rent on 400 acres— the acreage at that time thought to be all the land in the vacant strip; but Haley claimed in his testimony that he did not pay rent on the vacant land on the strip involved in this controversy; the vacant strip embraced in his lease included the land in controversy, and the record does not show that in leasing or in paying rent he excluded the land in controversy. We find that the land in controversy was contained in his lease and that he paid rent to the state on the land in controversy. Haley has for more than 20 years owned the quarter section No. 4, in block 13, and has been in possession and paid all taxes due on the quarter section as located.

14. Appellant Bird had lived in the immediate neighborhood of the land in controversy for some 25 years, and before buying of Walker had knowledge of all the material facts entering into this controversy. Bird was living about a mile from Haley's quarter section 4, when the L. Haley block (as the vacant strip was designated) was surveyed for Haley. He was with Ammerman when the vacant strip was surveyed, and had read the Ammerman field notes of block 13 after the survey was completed. He is a practical surveyor, and made one of the plats used in the evidence. Assuming that the northeast corner of Haley section 4 is a common corner with section 23, block W. J. G. 8, and beginning there to survey the northeast quarter of section 4, there would be no vacancy between section 23 or section 22 (same block) and the said northeast quarter of section 4.

15. The original maps from the general land office were sent up with the record, and we adopt them and make them parts of our findings.

After hearing the evidence the trial court instructed a verdict for appellee, Haley, and on the verdict so returned judgment was rendered for appellee.

Appellants present four assignments of error. They present practically but one question, and some of the assignments and propositions are but repetitions of others, only stressing a different or additional fact; but we will state the substance of each.

The first assignment is directed to the giving of the peremptory instruction, on the ground that the testimony shows that Haley is estopped from claiming under his patent any portion of the land in controversy lying

within the lines of the L. Haley block (that is, the vacant strip). It is claimed, under this assignment that Haley, with full knowledge of his rights, having recognized the title of the state to the land in controversy by accepting a lease from the state, and having held said land under said lease, is estopped from denying the title of the state under any title acquired by him anterior to the date of the patent; that with knowledge of the facts commenced with the vacant strip of land, and having made application for a survey of the land as vacant public school land, and thus recognized the title of the state, Haley is estopped from setting up title in opposition to appellants, subsequent vendees of the state, holding title in privity with the title of the state; that under the evidence submitted it was a material issue of fact for the jury as to the effect of Haley's acquiescence in the title of the state.

Under the second assignment it is claimed the giving of the peremptory charge was error, because the testimony shows an express contract between Haley and the state, by which the lines of the L. Haley block (the vacant strip) were located on the ground, leaving the quarter section of land sued for south of the vacant strip. It is the contention under the second assignment that, Haley having had the vacant strip surveyed and blocked as public domain (school land), and having fixed the lines on the ground by the survey and his survey 4 south of the vacant strip, he thereby made an agreement with the state that all the land in the vacant strip belonged to the state; that if Haley at one time claimed his quarter section 4 was tied onto block W. J. G. 8, and had actually located his line so as to connect the two blocks (W. J. G. 8 and 13) when the state surveyor located section 4 to the south, it then became a disputed boundary question, and having acquiesced in the last survey Haley is estopped from now claiming the land as he had formerly claimed it.

By the third assignment, and the propositions thereunder, it is appellants' contention that the peremptory charge is error because the testimony offered raised the question of long acquiescence by Haley in the survey locating the north boundary line of section 4, in block 13; that by reason of such acquiescence, and the recognition by the land office of the line as located, it was a question for the jury as to whether Haley was estopped from claiming the land in the vacant strip.

By the fourth assignment it is the contention of appellants that the peremptory charge is error because the testimony offered shows that Haley had attorned to the state, and had so recognized the title of the state to the vacant strip as to cut him off from setting up a title acquired anterior to his attornment; the appellants' title being in privity with the title owned by the state.

Appellee's counter proposition is submitted to the four assignments as a whole, and is to the effect that the charge complained of was not error, because it was undisputed that Haley was the owner of the land in controversy by patent from the state, and had been the owner from 1884; that appellants sought to defeat Haley's title by estoppel in pais by reason of the above dealings with the land in controversy between Haley and the state, but failed to show that they knew of said acts and conduct, or that they were misled thereby and induced to take a position to their detriment, or that they lost or would lose anything because of the matters complained of; that appellants had failed, as a matter of law, to establish the only claim asserted, that is, that Haley should not now be heard to claim the land in controversy because of the above conduct on his part indicating that at that time he was not claiming it.

The question is presented: Are the facts in the case sufficient, prima facie, to take the case to the jury on the issue of estoppel in pais? We have concluded that they are not.

At the time the state made the survey locating block 13, and at all times previous to the time of that survey, the state owned section No. 4, in block 13, as it did sections 22 and 23, in block W. J. G. 8, and also any vacant strip of land lying between the two said blocks of land. It is unquestioned that the state, while owning the lands embraced in the said two blocks, and while owning the vacant strip of land between the two blocks, by its patent granted to Haley section 4, in block 13, and by its survey and calls in the field notes and patent connected and tied section 4, block 13, onto block W. J. G. 8, thus locating on the ground the portion of its land the state intended to grant and did grant to Haley, and Haley went into actual possession of the land thus located, pointed out, and granted to him.

These facts are unquestioned. Thereafter the state by another survey discovered a vacant strip of land lying in between the two said blocks of land, which separate the said two blocks by a distance of some 200 varas, and it is this vacant strip which forms the subject of this controversy.

Appellants refer us to Floyd v. Rice, 28 Tex. 344; Lagow v. Glover, 77 Tex. 448, 14 S. W. 141; Koeningheim v. Sherwood, 79 Tex. 508, 16 S. W. 23, and other cases, holding that on a question of the true locality of a common boundary the acquiescence of the parties in, or their recognition of, a particular line, is evidence which should have weight in determining their boundary, affording, as it does, a presumption that the line so recognized is the correct line, and that such presumption is strengthened by

the lapse of time. But the case at bar, as we view it, is not a boundary case. In a boundary case the effort is to find the footsteps of the surveyor in making the location of the land. Here there is no controversy as to the location on the ground of the quarter section 4, block 13. There is no question of the location on the ground of the common corners of other lands to which it is tied. The cases to which we are referred are not in point.

The estoppel asserted by the appellants is, evidently, equitable estoppel, that is, the effect of the voluntary conduct of Haley, which, it is claimed, precludes him, both in law and equity, from asserting his title from the state to the land in controversy against appellants. But, as said by Judge Simpkins in Simpkins on Equity (2d Ed.) p. 609, and the cases referred to: Equitable estoppel has rules to regulate and determine rights arising out of the conduct of men, and the various interests which spring from their dealing with each other. To estop Haley from asserting his title to the land in controversy, appellants should show, we think, that they have in good faith relied upon Haley's conduct in the matters of fact shown in evidence, such as his lease from the state, his assignment of his lease to Thomas, and his acquiescence in the location of his land by reason of the vacant strip. We think also it should appear, to make effectual the estoppel, that appellants' title from the state was acquired by reason of the conduct of Haley, and their reliance in good faith upon his conduct. Appellants were dealing altogether with the state and not with Haley. There is no evidence showing that appellants relied upon anything that Haley did as inducing them to act in procuring their title from the state, or that their grantor, the state, relied upon any act of Haley in awarding title to them. But the facts seem to us to the contrary, that is, appellants knew of Haley's title and claim to the land; it was in his inclosure; they had no dealing with him; their dealing was with the state, and directly antagonistic to Haley's interest.

None of the documents in evidence show a release or conveyance by Haley to any one of his title to the land, nor do the documents or evidence show a contract or agreement by Haley of his title to the land. The evidence shows, we think, that the state, appellants' grantee, relied upon its own survey in establishing the vacant strip and in awarding the land to Walker.

We have concluded that none of the conditions necessary to constitute equitable estoppel, the only defense suggested, are shown in the evidence.

The court was not in error in giving the peremptory charge complained of.

The case is affirmed.

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes